UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------------x
ALON NACHMANY,

                              Plaintiff,

              -against-                                    **COMPLAINT**

                                                    **JURY TRIAL DEMANDED**

FXCM, INC., RYAN LEONARD and SETH LYONS, in
their individual and official Capacities,

                              Defendants.
---------------------------------------------------------------------x

        ALON NACHMANY (hereinafter "Plaintiff"), by his attorneys, Certilman Balin Adler &

Hyman, LLP, allege the following upon information and belief against FXCM, INC. (hereinafter

"FXCM"), RYAN LEONARD (hereinafter "Leonard") and SETH LYONS (hereinafter

"Lyons"), in their individual and official Capacities (collectively, "Defendants").

## NATURE OF ACTION

        1.      This is an action brought to address discrimination and harassment in employment

on the basis of national origin, religion, and sexual harassment in violation of Title VII of the

Civil Rights Act of 1964 (hereinafter "Title VII").

        2.      This also is an action brought to address discrimination and harassment in

employment on the basis of national origin, religion, and sexual harassment in violation of the

New York State Human Rights Law (New York Executive Law) (hereinafter "NYSHRL") § 290

*et seq*.

        3.      This further is an action brought to address discrimination and harassment in

employment on the basis of national origin, religion, sexual harassment, sexual orientation, and

perceived status in one or more protected classes in violation of the New York City Human Rights Law (New York City Administrative Code) (hereinafter "NYCHRL") §§ 8-101, *et seq.*

4.     This further is an action brought to address a common law claim of civil assault/battery that arise out of an altercation that involved Plaintiff and one of the Defendants.

5.     The action seeks compensatory and punitive damages to secure future protection and to redress the past deprivation of rights secured to Plaintiff under these federal, state, and local laws, as well as common law.

6.     Plaintiff alleges that Defendants terminated his employment with Defendant FXCM as a result of his status(es) in statutorily-protected classes of employees, namely national origin, sexual harassment, and/or sexual orientation.

7.     The actions complained of herein violate the enumerated statutory provisions because Plaintiff is Jewish by birth, practices Judaism, is heterosexual, and is a male.

8.     Plaintiff seeks: (a) compensation and other relief to make his whole resulting from his improper termination; and (b) all other, further relief that the Court deems just and proper.

## JURISDICTION AND VENUE

9.     The jurisdiction of this Court is invoked pursuant to 42 U.S.C. § 2000e-5(f)(3), 28 U.S.C. §§ 1331, and 1343(a)(3)-(4), and 28 U.S.C. § 1367(a) for claims arising under the NYSHRL and the NYCHRL, based on supplemental jurisdiction over claims that arise from a common nucleus of operative facts and are so intertwined with other matters pending before the Court as to make exercise of supplemental jurisdiction appropriate.

10.     Plaintiff has fully complied with all prerequisites to jurisdiction in this Court under Title VII.

2

11.     The instant action is founded on charges filed with the United States Equal Employment Opportunity Commission (hereinafter "EEOC") by Plaintiff in March 2015 (EEOC Charge No. 520-2015-01757).

12.     On October 14, 2015, the EEOC issued Plaintiff the Notice of Right to Sue.

13.     This lawsuit is commenced within 90 days of Plaintiff's receipt of this notice from the EEOC.

## PARTIES

14.     Plaintiff is Jewish by birth, practices Judaism, is heterosexual, and is a male.

15.     Although Plaintiff was born in the United States of America, he was raised in Israel, was educated in that country receiving his undergraduate and advanced degrees from Israeli educational institutions, and served in the Israeli Defense Force, where he attained the rank of Staff Sergeant.

16.     Plaintiff resides at 202 Sixth Avenue, Apt. 3A, New York, New York, 10041.

17.     From July 2, 2012 to September 2, 2014, Plaintiff was employed by Defendant FXCM as a Systems Engineer.

18.     At all relevant times to the instant matter, Defendant FXCM is a publically-traded company that is organized, incorporated, and existing under the laws of the State of New York, with its principal place of business located at 55 Water Street, 50th Floor, New York, New York, and is engaged in the financial markets industry.

19.     At all relevant times to the instant matter, Defendant FXCM is an employer as defined by Title VII, the NYSHRL, and the NYCHRL.

3

20.     At all relevant times to the instant matter, Defendant Lyons worked for Defendant FXCM primarily at its location at 55 Water Street, 50th Floor, New York, New York, and held the title of Senior Systems Engineer.

21.     At all relevant times to the instant matter, Defendant Leonard worked for Defendant FXCM primarily at its location at 55 Water Street, 50th Floor, New York, New York, and held the title of Director of Productions Engineering and subsequently Chief Information Officer.

## ALLEGATIONS OF FACT

22.     In June 2012, Plaintiff was interviewed for the Systems Engineer position by Defendant Lyons and Defendant Leonard.

23.     Shortly thereafter, Plaintiff was interviewed again for the Systems Engineer position by Ivan Brightly, who at that time held the title of Chief Information Officer, and Evan Milazzo, who at that time held the title of Executive Vice-President of Technology for Forex.

24.     During Plaintiff's interviews with FXCM, he was asked whether he could work on weekends; Plaintiff's response was that he could, provided that it did not interfere with his religious obligations, given that he is a practicing member of the Jewish faith.

25.     Specifically, Plaintiff indicated that he could work on weekends and Friday nights, on an emergency-as-needed basis, but that he preferred to be home celebrating Shabbat dinner with family.

26.     Approximately two weeks after Plaintiff's interview with Messrs. Brightly and Milazzo, Plaintiff was hired by Defendant FXCM, who was fully aware of Plaintiff's religious obligations.

27.     Plaintiff began working for Defendant FXCM on July 2, 2012.

4

3201233.1

28.     With regard to Plaintiff's compensation during his tenure with Defendant FXCM, he received an annual base salary of $70,000.00 and $6,000.00 bonus in 2012, received an annual base salary of $77,000.00 and $12,000.00 bonus in 2013, and received an annual base salary of $77,000.00 with no bonus in 2014.

29.     Also as a result of said employment, Plaintiff received a benefits program, including but not limited to comprehensive medical insurance coverage and a defined-contribution retirement package.

30.     With regard to Plaintiff's hours of work during his tenure with Defendant FXCM, Plaintiff typically worked from 10:00 a.m. to 8:00 p.m., five days per week, and sometimes worked until 11:00 p.m.

31.     Further, Plaintiff was required to and did, in fact, regularly work on weekends and holidays.

32.     Upon acceptance of this position with Defendant FXCM, Plaintiff was given an employment packet of documents, which included an employee handbook containing Defendant FXCM's code of conduct policies.

33.     As a Systems Engineer for Defendant FXCM, Plaintiff was responsible for the procurement, installation, and integration of computer software and programs related to securing and maintaining financial data for Defendant FXCM.

34.     During his period of employment with Defendant FXCM, Plaintiff received two formal performance evaluations, on which he received excellent, good, and satisfactory ratings.[1]

---

[1]     In fact, Plaintiff received stock options in Defendant FXCM as a result of his exemplary conduct and job performance. Said stock options were directly authorized by Defendant FXCM's Board of Directors.

3201233.1

35.     Further during his employment with Defendant FXCM, Plaintiff dutifully performed all tasks assigned to him in a timely fashion and his work product was of superior quality.

36.     At all times relevant to the instant matter, Defendant Lyons was Plaintiff's immediate supervisor, and Defendant Leonard was Defendant Lyon's immediate supervisor.

37.     However, during his tenure with Defendant FXCM, Plaintiff was subjected to a multitude of demeaning and derogatory comments and actions that specifically attacked Plaintiff's national origin, religion, sex, and sexual orientation, as well as consistently being subjected to harassing behavior that was pervasive and offensive.

38.     During Plaintiff's tenure with Defendant FXCM, Plaintiff was ridiculed by individuals, including Defendant Leonard, for the fact that he abstained from eating pork products, such as ham, bacon, and sausage.

39.     Defendant Leonard taunted Plaintiff for such abstention by placing pork products in and around Plaintiff's work space.

40.     Additionally, Defendant Leonard and Defendant Lyons relentlessly and callously mocked Plaintiff during a period of tumult in the ongoing Israeli/Palestinian conflict, when rockets were being launched into Israeli territory.

41.     Further, when Plaintiff asked to take a day off for Yom Kippur, which is the highest of all holy days in the Jewish faith, Defendant Leonard informed Plaintiff that he could not, and that Plaintiff's religious obligations, such as Plaintiff's religious observation of Yom Kippur, was a reason why Defendant Leonard did not want to hire Plaintiff.

6

42.     Also, one of Plaintiff's coworkers at Defendant FXCM "proudly" claimed that his ancestor was German by birth, a National Socialist by association, and a guard at the Auschwitz labor/death camp.

43.     Given that Plaintiff's grandfather and grandmother were prisoners in the labor/death camps established by the German National Socialistic Party during World War II, such proclamations were extremely disturbing to Plaintiff.

44.     In full and cognizant recognition of these facts, said coworker directly communicated to Plaintiff that "[Adolf] Hitler never finished" his final solution.

45.     Furthermore, Plaintiff was never granted to access to the prayer room, located in the offices of Defendant FXCM, and was never invited to participate in a minyan.[2]

46.     Also during Plaintiff's tenure with Defendant FXCM, Plaintiff, who is a heterosexual male arrived at his work location in 2013, to witness Defendant Leonard posting a derogatory message on the white board that is centrally located in the space designated for Defendant FXCM's Information Technology/Security Department (hereinafter "IT Department").[3]

47.     The white board read: "Alon is a dick. Why won't he shut the fuck up? That is all asshole."

48.     Despite Plaintiff's multiple requests that the posting be removed, it remained for nearly two months.

---

[2]     Minyan is a prayer group of at least 10 individuals, and participation in a minyan is considered in the Jewish faith to be a mitzvah, or literally translated "commandment." Mitzvahs are a sacred tenet of the Jewish faith, and usually take the form of performing good deeds in accordance with Talmudic law.

[3]     Said white board was also visible to all Defendant FXCM employees to observe.

49.     No other employee in the IT Department was ever the target of such a message on the white board.

50.     Also, during Plaintiff's tenure with Defendant FXCM, he was briefly away from his desk on a bathroom break.

51.     At such time, Defendant Leonard, deliberately and without permission, changed his background from a generic background image to a graphic, sexually-explicit image of a naked male with an erect penis, spreading his buttocks, with two hands, to expose his internal anatomy.

52.     Also, Defendant Leonard took a photograph of Plaintiff and digitally drew onto the photograph the depiction of an individual placing his erect penis in front of Plaintiff's mouth to simulate oral sex and defecation of feces onto Plaintiff's head.

53.     This grossly distorted and sexualized image was transmitted by Defendant Leonard to Plaintiff, as well as other employees of Defendant FXCM.

54.     In addition, Plaintiff was exposed to and often berated with such phrases and depictions of terms such as "tub girl," "meat spin," "lemon party," and "goatse."[4]

55.     Plaintiff was unfamiliar with these terms until he began working for Defendant Leonard and Defendant Lyons.

56.     Despite this pervasive environment of intolerant and offensive behavior, Plaintiff was a diligent, hard-working employee.[5]

---

[4]     Please be advised that an internet search of these terms is not safe for work and will demonstrate vial scene of human depravity, which were common place with Defendant Leonard and Defendant Lyons.

[5]     In the underlying administrative action, Defendants attempted to portray Plaintiff as a sub-par employee with a problem of meeting deadlines and completing projects. However, as can been seen in Plaintiff's rebuttal letter in the administrative action, one can see that such unfounded averments by Defendants are simply *post hoc* justifications for discrimination and harassment.

8

57.     Plaintiff received two formal performance evaluations during his tenure with Defendant FXCM, on which he received excellent, good, and satisfactory ratings.

58.     As a result of these evaluations, Plaintiff was compensated accordingly.

59.     Furthermore, as an example of Plaintiff's diligent work ethic, Plaintiff was integral in Defendant FXCM maintaining its operational capabilities during Super Storm Sandy.

60.     With this generational storm bearing down on the New York City metropolitan area, Defendant FXCM closed its doors on Monday October 29, 2012 at 8:00 p.m., and Plaintiff was instructed to continue his work from his home.

61.     However, due to the entire computer system loosing connectivity, Defendant Lyons informed Plaintiff, via cell phone, to return to the office to check on the equipment and resolve the connectivity issue.

62.     Despite the great peril to Plaintiff's health, Plaintiff attempted to navigate the dangerous City streets to reach Defendant FXCM's office.

63.     Plaintiff attempted to drive from his apartment to Defendant FXCM's office, but was stopped at a roadblock at Franklin Avenue and West Broadway set up by the New York City Police Department.

64.     Then, Plaintiff, with Defendant Lyon's instructions in mind, then traversed the remaining blocks on foot, literally holding onto street signs to avoid being blown away by the hurricane-level winds.

65.     Upon arriving at the office, Plaintiff attempted to enter the building, but could not enter because the entire lobby was flooded.

9

66.     Upon informing Defendant Lyons that the stairs to the building were underwater and the lobby was flooded, Defendant Lyons instructed Plaintiff to return home, which he miraculously was somehow able to accomplish.

67.     The next morning, at around 9:00 a.m., Plaintiff went back down to the office, again at the instruction of Defendant Lyons, to ensure that all the computer equipment was accounted for and operational.

68.     However, even though he was able to get into the building this time, he could not access Defendant FXCM's office.

69.     After waiting for two hours at that location, he then traveled to Defendant FXCM's Data Center located in North Bergen, New Jersey (hereinafter "Data Center") to attempt to rectify the connectivity problem from that, other location.

70.     On Wednesday October 31, 2012, Plaintiff met Defendant Lyons and Defendant Leonard at the Data Center, where they purchased equipment and a one-year lease for additional space.

71.     For the next several months, Plaintiff, along with Defendant Lyons and Defendant Leonard, was integral in setting up the Data Center as Defendant FXCM's temporary headquarters from where Defendant Lyons, Defendant Leonard, and Plaintiff, and approximately 25 traders, worked.[6]

72.     Based upon the great amount of personal sacrifice exhibited by Plaintiff in connection with this natural disaster, it is incongruous that Defendant FXCM would attempt characterize Plaintiff as a poor employee who was not dedicated to Defendants.

---

[6]     During Plaintiff's time working at the Data Center, Defendant Leonard made comments about rockets being launched into Gaza, and he also referred to Teaneck, New Jersey as "Jew-landia."

10

73.     Despite Plaintiff's dedication to Defendant FXCM, he was nevertheless targeted by Defendant Leonard and Defendant Lyons, and was subjected to the above-described harassing behavior.

74.     As such, Plaintiff lodged several complaints with Eduard Yusupov, who is FXCM's Global Head of Dealings, to discuss the behavior, actions, and words of Defendant Leonard and Defendant in the workplace, and in fact met with Mr. Yusupov on several occasions regarding said complaints.[7]

75.     Specifically, Plaintiff spoke with Mr. Yusupov about Defendant Lyons and Defendant Leonard concerning their behavior, their comments, their work ethic, and their questionable business dealings.

76.     In addition to the abhorrent behavior of Defendant Leonard and Defendant Lyons which were in contravention of Title VII, the NYSHRL, and the NYCHRL, Plaintiff and Mr. Yusupov reviewed all the purchasing of the IT Department, which is overseen by and authorized through Defendant Leonard and Defendant Lyons, with respect to a number of questionable transactions involving software and hardware.

77.     Plaintiff and Mr. Yusupov further discussed the purchase of servers from an outside vendor, as well as the exorbitant expenditures at Killarney Rose, which is a nearby tavern frequented by Defendant Leonard.

---

[7]     It must be noted that it was commonly known throughout Defendant FXCM and its IT Department that if an employee filed a complaint with the Human Resources Department, they would be subject to retaliatory actions. Accordingly, Plaintiff felt more comfortable speaking with Mr. Yusupov about these complaints. This retaliatory behavior can be verified by current and former employees of Defendant FXCM.

3201233.1

78.     Upon information and belief, based upon these conversations between Plaintiff and Mr. Yusupov, Mr. Yusupov spoke with Defendant FXCM's partners about these improprieties, and scheduled a meeting with Plaintiff and Defendant Leonard.

79.     At this meeting, Defendant Leonard never mentioned Plaintiff's alleged poor work performance, but rather discussed Defendant Lyon's poor work ethic and the strained, sexually charged atmosphere in the IT Department.

80.     However, despite Plaintiff's complaints and meetings, Defendants took no corrective action.

81.     One week after the meeting between Plaintiff, Defendant Leonard, and Mr. Yusupov, on September 2, 2014, Plaintiff was terminated from his position at Defendant FXCM.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

82.     On or about March 10 2015, Plaintiff, through counsel, filed a completed and executed Charge of Discrimination with the EEOC.  Annexed hereto as Exhibit 1 is a copy of the EEOC Charge of Discrimination.

83.     On or about May 18, 2015, Defendants, through counsel, filed its answer to Plaintiff's EEOC Charge of Discrimination.   Annexed hereto as Exhibit 2 is a copy of Defendants' response.

84.     On or about July 14, 2015, Plaintiff, through counsel, filed its reply to Defendants' response. Annexed hereto as Exhibit 3 is a copy of Plaintiff's reply.

85.     On October 14, 2015, the EEOC issued Plaintiff the Notice of Right to Sue. Annexed hereto as Exhibit 4 is a copy of the EEOC's Notice of Right to Sue.

## FIRST CAUSE OF ACTION
## VIOLATIONS OF TITLE VII (NATIONAL ORIGIN)
## AGAINST DEFENDANT FXCM

12

3201233.1

86.     Plaintiff repeats and realleges Paragraphs 1 through __ of the Complaint as if fully set forth herein.

87.     In order to sufficiently allege a *prima facie* case under Title VII: i) an individual demonstrates that he/she is a member of a protected class; ii) an individual demonstrates that his/her employer knew or had reason to know that said individual is a member of a protected class; iii) an individual was caused to suffer from an adverse employment action effectuated by his/her employer; and iv) his/her employer effectuated said adverse employment action as a result of an individual's membership in a protected class.    *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

88.     Plaintiff spent most of his life in Israel, being raised in that country; he received his undergraduate and graduate degrees from educational institutions in Israel; and he served in the IDF.

89.     Defendants were well aware of Plaintiff's national origin, as such matters were disclosed on Plaintiff's resume, and were discussed amongst his supervisors, including but not limited to Defendant Leonard and Defendant Lyons.

90.     On September 2, 2014, Plaintiff was terminated from his employment with Defendant FXCM.

91.     Prior to said termination, Defendants relentlessly and callously mocked Plaintiff during a period of tumult in the ongoing Israeli/Palestinian conflict, when rockets were being launched into Israeli territory.

92.     Further, Plaintiff, whose grandfather and grandmother were prisoners in labor/death camps established by the German National Socialist Party during World War II, was subjected to ridicule by one of his coworkers at Defendant FXCM, who "proudly" claimed that

13

his ancestor was a guard at the Auschwitz labor/death camp, and who indicated that "[Adolf]
Hitler never finished" his final solution.

93.     Accordingly, the impetus of Plaintiff's termination was his national origin.

94.     Finally, at all times relevant hereto, Plaintiff was and still is capable of
performing the tasks to which he had been previously assigned, and prior to his termination, had
previously performed said tasks without incident.

95.     Based upon the foregoing, and given the fact that Plaintiff has satisfied its
"minimal burden," *Vuona v. Merrill Lynch & Co., Inc.*, 919 F.Supp.2d 359 (S.D.N.Y. 2013),
Plaintiff has sufficiently alleged that he was subjected to a discriminatory employment practice,
namely his termination, and said termination was caused by and/or resulted from Plaintiff's
membership in a protected class of employees, namely his national origin.

96.     Accordingly, Plaintiff seeks all lawful remedies under the applicable statutes,
including but not limited to back pay, front pay, compensatory damages, punitive damages,
attorneys' fees, administrative costs, and all other relief that this Court deems just and proper.

**SECOND CAUSE OF ACTION**
**VIOLATIONS OF TITLE VII (RELIGION)**
**AGAINST DEFENDANT FXCM**

97.     Plaintiff repeats and realleges Paragraphs 1 through ___ of the Complaint as if
fully set forth herein.

98.     As stated above, in order to sufficiently allege a *prima facie* case under Title VII:
i) an individual demonstrates that he/she is a member of a protected class; ii) an individual
demonstrates that his/her employer knew or had reason to know that said individual is a member
of a protected class; iii) an individual was caused to suffer from an adverse employment action
effectuated by his/her employer; and iv) his/her employer effectuated said adverse employment

14

action as a result of an individual's membership in a protected class. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

99.     Plaintiff was born into, raised, and continues to be a practicing member of the Jewish religion.

100.     Defendants knew of Plaintiff's religion because such matter was discussed during Plaintiff's initial interview with Defendants, during which time Plaintiff indicated that he was available to work on weekends, on an emergency basis, provided such work duties did not interfere with his religious obligations.

101.     On September 2, 2014, Plaintiff was terminated from his employment with Defendant FXCM.

102.     Prior to said termination, Plaintiff was ridiculed by individuals, including Defendant Leonard, for the fact that he abstained from eating pork products, such as ham, bacon, and sausage.

103.     Defendant Leonard taunted Plaintiff for such abstention by placing pork products in and around Plaintiff's work space.

104.     Further, when Plaintiff asked to take a day off for Yom Kippur, which is the highest of all holy days in the Jewish faith, Defendant Leonard informed Plaintiff that he could not, and that Plaintiff's religious obligations, such as Plaintiff's religious observation of Yom Kippur, was a reason why Defendant Leonard did not want to hire Plaintiff.

105.     Additionally, Plaintiff was never granted to access to the prayer room, located in the offices of Defendant FXCM, and was never invited to participate in a minyan.

106.     Accordingly, the impetus for Plaintiff's termination was his religion.

15

107.     Finally, at all times relevant hereto, Plaintiff was and still is capable of performing the tasks to which he had been previously assigned, and prior to his termination, had previously performed said tasks without incident.

108.     Based upon the foregoing, and given the fact that Plaintiff has satisfied its "minimal burden," *Vuona v. Merrill Lynch & Co., Inc.*, 919 F.Supp.2d 359 (S.D.N.Y. 2013), Plaintiff has sufficiently alleged that he was subjected to a discriminatory employment practice, namely his termination, and said termination was caused by and/or resulted from Plaintiff's membership in a protected class of employees, namely his religion.

109.     Accordingly, Plaintiff seeks all lawful remedies under the applicable statutes, including but not limited to back pay, front pay, compensatory damages, punitive damages, attorneys' fees, administrative costs, and all other relief that this Court deems just and proper.

## THIRD CAUSE OF ACTION
## VIOLATIONS OF TITLE VII (SEXUAL HARRASMENT)
## AGAINST DEFENDANT FXCM

110.     Plaintiff repeats and realleges Paragraphs 1 through ___ of the Complaint as if fully set forth herein.

111.     To establish a *prima facie* claim of sexual harassment and hostile work environment, plaintiff must establish: 1) that the workplace was permeated with discriminatory intimidation that was sufficiently severe or pervasive to alter the conditions of her work environment and, 2) that a specific basis exists for imputing the conduct that created the hostile environment to the employer. *Van Zant v. KLM Royal Dutch Airlines*, 80 F.3d 708 (2d Cir. 1996).

112.     When determining whether the workplace conduct rises to the level of a hostile work environment, "the Court must consider the frequency and severity of the discriminatory

16

conduct, whether the conduct is physically threatening or humiliating, and whether the conduct unreasonably interferes with the plaintiff's work performance." *Salmon v. Pilant Corp.*, 965 F.Supp.2d 302 (W.D.N.Y. 2013).

113.    After establishing the conduct complained of therein constituted sexual harassment, a plaintiff must show that this conduct can be imputed onto the employer. *See Harris v. Forklift Systems, Inc.*, 510 U.S. 17 (1993).

114.    Although employers are not automatically liable for the conduct if its employees, an employer is liable for the actions of its supervisory staff, *see Kotcher v. Rosa and Sullivan Appliance Ctr., Inc.*, 957 F.2d 59 (2d Cir. 1992), as well as its own negligence. *See Faragher v. City of Boca Raton*, 524 U.S. 775 (1998).

115.    During Plaintiff's tenure with Defendant FXCM, his work environment was sufficiently severe and pervasive with sexually charged material and intimidation.

116.    Defendant Leonard wrote on the white board in the IT Department: "Alon is a dick. Why won't he shut the fuck up? That is all asshole."

117.    Despite Plaintiff's multiple requests that the posting be removed, it remained for nearly two months, and no other employee in the IT Department was ever the target of such a message on the white board.

118.    Also, during Plaintiff's tenure with Defendant FXCM, Defendant Leonard, deliberately and without permission, changed the background on Plaintiff's computer to a graphic, sexually-explicit image of a naked male with an erect penis, spreading his buttocks, with two hands, to expose his internal anatomy.

119.    Defendant Leonard also took a photograph of Plaintiff and digitally drew onto the photograph the depiction of an individual placing his erect penis in front of Plaintiff's mouth to

17

simulate oral sex and defecation of feces onto Plaintiff's head; and this image was transmitted by Defendant Leonard to all employees in the IT Department.

120.    In addition, Plaintiff was exposed to and often berated with such phrases and depictions of terms such as "tub girl," "meat spin," "lemon party," and "goatse"; Plaintiff was unfamiliar with these terms until he began working for Defendants.

121.    The above-enunciated behavior created a hostile work environment for Plaintiff, reasonably interfered with Plaintiff's work performance, and was perpetrated by Plaintiff's direct and indirect supervisors, namely Defendant Lyons and Defendant Leonard.

122.    Based upon the foregoing, and given the fact that Plaintiff has satisfied its "minimal burden," *Vuona v. Merrill Lynch & Co., Inc.*, 919 F.Supp.2d 359 (S.D.N.Y. 2013), Plaintiff has sufficiently alleged that he was subjected to a discriminatory employment practice, namely his termination.

123.    Accordingly, Plaintiff seeks all lawful remedies under the applicable statutes, including but not limited to back pay, front pay, compensatory damages, punitive damages, attorneys' fees, administrative costs, and all other relief that this Court deems just and proper.

## FOURTH CAUSE OF ACTION
## VIOLATIONS OF NYSHRL (NATIONAL ORIGIN)
## AGAINST DEFENDANT FXCM

124.    Plaintiff repeats and realleges Paragraphs 1 through __ of the Complaint as if fully set forth herein.

125.    Causes of actions alleging violations of NYSHRL §§ 290 and 296 are treated in a similar manner to causes of action alleging violations of Title VII.  *See Ferrante v. American Lung Assn.*, 90 N.Y.2d 623 (1997); *See also Kersul v. Skulls Angels, Inc.*, 130 Misc.2d 345 (Sup. Ct., Queens Co. 1985).

3201233.1

126.    Pursuant to NYSHRL §§ 290 and 296, a *prima facie* case is alleged if: i) a plaintiff demonstrates that he/she is a member of a protected class; ii) a plaintiff demonstrates that defendants knew or had reason to know that a plaintiff is a member of a protected class; iii) a plaintiff was caused to suffer from an adverse employment action effectuated by defendants; iv) defendants effectuated said adverse employment action as a result of plaintiff's membership in a protected class.  *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

127.    Plaintiff spent most of his life in Israel, being raised in that country; he received his undergraduate and graduate degrees from educational institutions in Israel; and he served in the IDF.

128.    Defendants were well aware of Plaintiff's national origin, as such matters were disclosed on Plaintiff's resume, and were discussed amongst his supervisors, including but not limited to Defendant Leonard and Defendant Lyons.

129.    On September 2, 2014, Plaintiff was terminated from his employment with Defendant FXCM.

130.    Prior to said termination, Defendants relentlessly and callously mocked Plaintiff during a period of tumult in the ongoing Israeli/Palestinian conflict, when rockets were being launched into Israeli territory.

131.    Further, Plaintiff, whose grandfather and grandmother were prisoners in labor/death camps established by the German National Socialist Party during World War II, was subjected to ridicule by one of his coworkers at Defendant FXCM, who "proudly" claimed that his ancestor was a guard at the Auschwitz labor/death camp, and who indicated that "[Adolf] Hitler never finished" his final solution.

132.    Accordingly, the impetus of Plaintiff's termination was his national origin.

3201233.1

133. Finally, at all times relevant hereto, Plaintiff was and still is capable of performing the tasks to which he had been previously assigned, and prior to his termination, had previously performed said tasks without incident.

134. Based upon the foregoing, and given the fact that Plaintiff has satisfied its "minimal burden," *Vuona v. Merrill Lynch & Co., Inc.*, 919 F.Supp.2d 359 (S.D.N.Y. 2013), Plaintiff has sufficiently alleged that he was subjected to a discriminatory employment practice, namely his termination, and said termination was caused by and/or resulted from Plaintiff's membership in a protected class of employees, namely his national origin.

135. Accordingly, Plaintiff seeks all lawful remedies under the applicable statutes, including but not limited to back pay, front pay, compensatory damages, punitive damages, attorneys' fees, administrative costs, and all other relief that this Court deems just and proper.

## FIFTH CAUSE OF ACTION
## VIOLATIONS OF NYSHRL (RELIGION)
## AGAINST DEFENDANT FXCM

136. Plaintiff repeats and realleges Paragraphs 1 through __ of the Complaint as if fully set forth herein.

137. Causes of actions alleging violations of NYSHRL §§ 290 and 296 are treated in a similar manner to causes of action alleging violations of Title VII. *See Ferrante v. American Lung Assn.*, 90 N.Y.2d 623 (1997); *See also Kersul v. Skulls Angels, Inc.*, 130 Misc.2d 345 (Sup. Ct., Queens Co. 1985).

138. Pursuant to NYSHRL §§ 290 and 296, a *prima facie* case is alleged if: i) a plaintiff demonstrates that he/she is a member of a protected class; ii) a plaintiff demonstrates that defendants knew or had reason to know that a plaintiff is a member of a protected class; iii) a plaintiff was caused to suffer from an adverse employment action effectuated by defendants;

20

iv) defendants effectuated said adverse employment action as a result of plaintiff's membership in a protected class. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

139. Plaintiff was born into, raised, and continues to be a practicing member of the Jewish religion.

140. Defendants knew of Plaintiff's religion because such matter was discussed during Plaintiff's initial interview with Defendants, during which time Plaintiff indicated that he was available to work on weekends, on an emergency basis, provided such work duties did not interfere with his religious obligations.

141. On September 2, 2014, Plaintiff was terminated from his employment with Defendant FXCM.

142. Prior to said termination, Plaintiff was ridiculed by individuals, including Defendant Leonard, for the fact that he abstained from eating pork products, such as ham, bacon, and sausage.

143. Defendant Leonard taunted Plaintiff for such abstention by placing pork products in and around Plaintiff's work space.

144. Further, when Plaintiff asked to take a day off for Yom Kippur, which is the highest of all holy days in the Jewish faith, Defendant Leonard informed Plaintiff that he could not, and that Plaintiff's religious obligations, such as Plaintiff's religious observation of Yom Kippur, was a reason why Defendant Leonard did not want to hire Plaintiff.

145. Additionally, Plaintiff was never granted to access to the prayer room, located in the offices of Defendant FXCM, and was never invited to participate in a minyan.

146. Accordingly, the impetus for Plaintiff's termination was his religion.

21

147.    Finally, at all times relevant hereto, Plaintiff was and still is capable of performing the tasks to which he had been previously assigned, and prior to his termination, had previously performed said tasks without incident.

148.    Based upon the foregoing, and given the fact that Plaintiff has satisfied its "minimal burden," *Vuona v. Merrill Lynch & Co., Inc.*, 919 F.Supp.2d 359 (S.D.N.Y. 2013), Plaintiff has sufficiently alleged that he was subjected to a discriminatory employment practice, namely his termination, and said termination was caused by and/or resulted from Plaintiff's membership in a protected class of employees, namely his religion.

149.    Accordingly, Plaintiff seeks all lawful remedies under the applicable statutes, including but not limited to back pay, front pay, compensatory damages, punitive damages, attorneys' fees, administrative costs, and all other relief that this Court deems just and proper.

### SIXTH CAUSE OF ACTION
### VIOLATIONS OF NYSHRL (SEXUAL HARRASMENT)
### AGAINST DEFENDANT FXCM

150.    Plaintiff repeats and realleges Paragraphs 1 through __ of the Complaint as if fully set forth herein.

151.    Causes of actions alleging violations of NYSHRL §§ 290 and 296 are treated in a similar manner to causes of action alleging violations of Title VII. *See Ferrante v. American Lung Assn.*, 90 N.Y.2d 623 (1997); *See also Kersul v. Skulls Angels, Inc.*, 130 Misc.2d 345 (Sup. Ct., Queens Co. 1985).

152.    To establish a *prima facie* claim of sexual harassment and hostile work environment, plaintiff must establish: 1) that the workplace was permeated with discriminatory intimidation that was sufficiently severe or pervasive to alter the conditions of her work environment and, 2) that a specific basis exists for imputing the conduct that created the hostile

22

environment to the employer. *Father Belle Comm. Ctr. v. N.Y.S. Div. of Human Rights*, 221 A.D.2d 44 (4th Dept. 1996).

153.    When determining whether the workplace conduct rises to the level of a hostile work environment, "the Court must consider the frequency and severity of the discriminatory conduct, whether the conduct is physically threatening or humiliating, and whether the conduct unreasonably interferes with the plaintiff's work performance." *Salmon v. Pilant Corp.*, 965 F.Supp.2d 302 (W.D.N.Y. 2013).

154.    After establishing the conduct complained of therein constituted sexual harassment, a plaintiff must show that this conduct can be imputed onto the employer. *See Thomas v. Tam Equities, Inc.*, 6 Misc.3d 1021(A) (Sup. Ct. Queens Co. 2005).

155.    Although employers are not automatically liable for the conduct if its employees, an employer is liable for the actions of its supervisory staff, *see Kotcher v. Rosa and Sullivan Appliance Ctr., Inc.*, 957 F.2d 59 (2d Cir. 1992), as well as its own negligence. *See Faragher v. City of Boca Raton*, 524 U.S. 775 (1998).

156.    During Plaintiff's tenure with Defendant FXCM, his work environment was sufficiently severe and pervasive with sexually charged material and intimidation.

157.    Defendant Leonard wrote on the white board in the IT Department: "Alon is a dick. Why won't he shut the fuck up? That is all asshole."

158.    Despite Plaintiff's multiple requests that the posting be removed, it remained for nearly two months, and no other employee in the IT Department was ever the target of such a message on the white board.

159.    Also, during Plaintiff's tenure with Defendant FXCM, Defendant Leonard, deliberately and without permission, changed the background on Plaintiff's computer to a

23

graphic, sexually-explicit image of a naked male with an erect penis, spreading his buttocks, with two hands, to expose his internal anatomy.

160.    Defendant Leonard also took a photograph of Plaintiff and digitally drew onto the photograph the depiction of an individual placing his erect penis in front of Plaintiff's mouth to simulate oral sex and defecation of feces onto Plaintiff's head; and this image was transmitted by Defendant Leonard to all employees in the IT Department.

161.    In addition, Plaintiff was exposed to and often berated with such phrases and depictions of terms such as "tub girl," "meat spin," "lemon party," and "goatse"; Plaintiff was unfamiliar with these terms until he began working for Defendants.

162.    The above-enunciated behavior created a hostile work environment for Plaintiff, reasonably interfered with Plaintiff's work performance, and was perpetrated by Plaintiff's direct and indirect supervisors, namely Defendant Lyons and Defendant Leonard.

163.    Based upon the foregoing, and given the fact that Plaintiff has satisfied its "minimal burden," *Vuona v. Merrill Lynch & Co., Inc.*, 919 F.Supp.2d 359 (S.D.N.Y. 2013), Plaintiff has sufficiently alleged that he was subjected to a discriminatory employment practice, namely his termination.

164.    Accordingly, Plaintiff seeks all lawful remedies under the applicable statutes, including but not limited to back pay, front pay, compensatory damages, punitive damages, attorneys' fees, administrative costs, and all other relief that this Court deems just and proper.

**SEVENTH CAUSE OF ACTION**
**VIOLATIONS OF NYCHRL (NATIONAL ORIGIN)**
**AGAINST DEFENDANT FXCM**

165.    Plaintiff repeats and realleges Paragraphs 1 through __ of the Complaint as if fully set forth herein.

24

166.     In order to establish a *prima facie* claim under the NYCHRL, it must be alleged that: i) an individual demonstrates that he/she is a member of a protected class; ii) an individual demonstrates that his/her employer knew or had reason to know that said individual is a member of a protected class; iii) an individual was caused to suffer from an adverse employment action effectuated by his/her employer; and iv) his/her employer effectuated said adverse employment action as a result of said individual's membership in a protected class.     *See Levin v. Yeshiva Univ.*, 96 N.Y.2d 484 (2001).

167.     Plaintiff spent most of his life in Israel, being raised in that country; he received his undergraduate and graduate degrees from educational institutions in Israel; and he served in the IDF.

168.     Defendants were well aware of Plaintiff's national origin, as such matters were disclosed on Plaintiff's resume, and were discussed amongst his supervisors, including but not limited to Defendant Leonard and Defendant Lyons.

169.     On September 2, 2014, Plaintiff was terminated from his employment with Defendant FXCM.

170.     Prior to said termination, Defendants relentlessly and callously mocked Plaintiff during a period of tumult in the ongoing Israeli/Palestinian conflict, when rockets were being launched into Israeli territory.

171.     Further, Plaintiff, whose grandfather and grandmother were prisoners in labor/death camps established by the German National Socialist Party during World War II, was subjected to ridicule by one of his coworkers at Defendant FXCM, who "proudly" claimed that his ancestor was a guard at the Auschwitz labor/death camp, and who indicated that "[Adolf] Hitler never finished" his final solution.

25

172.     Accordingly, the impetus of Plaintiff's termination was his national origin.

173.     Finally, at all times relevant hereto, Plaintiff was and still is capable of performing the tasks to which he had been previously assigned, and prior to his termination, had previously performed said tasks without incident.

174.     Based upon the foregoing, and given the fact that Plaintiff has satisfied its initial burden, *see Stalker v. Stewart Tenants Corp.*, 2010 N.Y. Misc. LEXIS 6921, *7 (Sup. Ct. N.Y. Co. November 9, 2010), Plaintiff has sufficiently alleged that he was subjected to a discriminatory employment practice, namely his termination, and said termination was caused by and/or resulted from Plaintiff's national origin.

175.     Accordingly, Plaintiff seeks all lawful remedies under the applicable statutes, including but not limited to back pay, front pay, compensatory damages, punitive damages, attorneys' fees, administrative costs, and all other relief that this Court deems just and proper.

## EIGHTH CAUSE OF ACTION
## VIOLATIONS OF NYCHRL (RELIGION)
## AGAINST DEFENDANT FXCM

176.     Plaintiff repeats and realleges Paragraphs 1 through __ of the Complaint as if fully set forth herein.

177.     In order to establish a *prima facie* claim under the NYCHRL, it must be alleged that: i) an individual demonstrates that he/she is a member of a protected class; ii) an individual demonstrates that his/her employer knew or had reason to know that said individual is a member of a protected class; iii) an individual was caused to suffer from an adverse employment action effectuated by his/her employer; and iv) his/her employer effectuated said adverse employment action as a result of said individual's membership in a protected class.     *See Levin v. Yeshiva Univ.*, 96 N.Y.2d 484 (2001).

26

178.    Plaintiff was born into, raised, and continues to be a practicing member of the Jewish religion.

179.    Defendants knew of Plaintiff's religion because such matter was discussed during Plaintiff's initial interview with Defendants, during which time Plaintiff indicated that he was available to work on weekends, on an emergency basis, provided such work duties did not interfere with his religious obligations.

180.    On September 2, 2014, Plaintiff was terminated from his employment with Defendant FXCM.

181.    Prior to said termination, Plaintiff was ridiculed by individuals, including Defendant Leonard, for the fact that he abstained from eating pork products, such as ham, bacon, and sausage.

182.    Defendant Leonard taunted Plaintiff for such abstention by placing pork products in and around Plaintiff's work space.

183.    Further, when Plaintiff asked to take a day off for Yom Kippur, which is the highest of all holy days in the Jewish faith, Defendant Leonard informed Plaintiff that he could not, and that Plaintiff's religious obligations, such as Plaintiff's religious observation of Yom Kippur, was a reason why Defendant Leonard did not want to hire Plaintiff.

184.    Additionally, Plaintiff was never granted to access to the prayer room, located in the offices of Defendant FXCM, and was never invited to participate in a minyan.

185.    Accordingly, the impetus for Plaintiff's termination was his religion.

186.    Finally, at all times relevant hereto, Plaintiff was and still is capable of performing the tasks to which he had been previously assigned, and prior to his termination, had previously performed said tasks without incident.

27

187.    Based upon the foregoing, and given the fact that Plaintiff has satisfied its initial burden, *see Stalker v. Stewart Tenants Corp.*, 2010 N.Y. Misc. LEXIS 6921, *7 (Sup. Ct. N.Y. Co. November 9, 2010), Plaintiff has sufficiently alleged that he was subjected to a discriminatory employment practice, namely his termination, and said termination was caused by and/or resulted from Plaintiff's religion.

188.    Accordingly, Plaintiff seeks all lawful remedies under the applicable statutes, including but not limited to back pay, front pay, compensatory damages, punitive damages, attorneys' fees, administrative costs, and all other relief that this Court deems just and proper.

## NINTH CAUSE OF ACTION
## VIOLATIONS OF NYCHRL (SEXUAL HARRASMENT)
## AGAINST DEFENDANT FXCM

189.    Plaintiff repeats and realleges Paragraphs 1 through __ of the Complaint as if fully set forth herein.

190.    Under § 8-107(1)(a), it is an unlawful discriminatory practice for an employer, or an employee or agent thereof to discharge an employee because of his/her actual or perceived age, race, creed, color national origin, gender, disability, marital status, partnership status, sexual orientation or citizenship.

191.    To establish a *prima facie* case under the NYCHRL, "a plaintiff need not demonstrate that he or she was subjected to 'severe and pervasive' sexual harassment; plaintiff need only demonstrate that he/she 'has been treated less well than other employees because of his/her gender." *Davis v. Phoenix Ancient Art, S.A.*, 39 Misc3d 1214(A), *6 (Sup. Ct. N.Y. Co. 2013).

28

192.    In *Williams v. New York City Hous. Auth.*, 61 A.D.3d 62, 78 (1st Dept. 2009), the court determined that "the 'severe and pervasive' test reduces the incentive for employers to create workplaces that have zero tolerance for conduct demeaning to a worker."

193.    Further, "questions of severity or pervasiveness of the discriminatory conduct apply only to damages, not liability." *Williams*, at 76.

194.    During Plaintiff's tenure with Defendant FXCM, his work environment was sufficiently severe and pervasive with sexually charged material and intimidation.

195.    Defendant Leonard wrote on the white board in the IT Department: "Alon is a dick. Why won't he shut the fuck up? That is all asshole."

196.    Despite Plaintiff's multiple requests that the posting be removed, it remained for nearly two months, and no other employee in the IT Department was ever the target of such a message on the white board.

197.    Also, during Plaintiff's tenure with Defendant FXCM, Defendant Leonard, deliberately and without permission, changed the background on Plaintiff's computer to a graphic, sexually-explicit image of a naked male with an erect penis, spreading his buttocks, with two hands, to expose his internal anatomy.

198.    Defendant Leonard also took a photograph of Plaintiff and digitally drew onto the photograph the depiction of an individual placing his erect penis in front of Plaintiff's mouth to simulate oral sex and defecation of feces onto Plaintiff's head; and this image was transmitted by Defendant Leonard to all employees in the IT Department.

199.    In addition, Plaintiff was exposed to and often berated with such phrases and depictions of terms such as "tub girl," "meat spin," "lemon party," and "goatse"; Plaintiff was unfamiliar with these terms until he began working for Defendants.

29

200.     The above-enunciated behavior created a hostile work environment for Plaintiff,
reasonably interfered with Plaintiff's work performance, and was perpetrated by Plaintiff's direct
and indirect supervisors, namely Defendant Lyons and Defendant Leonard.

201.     Based upon the foregoing, and given the fact that Plaintiff has satisfied its initial
burden, *see Stalker v. Stewart Tenants Corp.*, 2010 N.Y. Misc. LEXIS 6921, *7 (Sup. Ct. N.Y.
Co. November 9, 2010), Plaintiff has sufficiently alleged that he was subjected to a
discriminatory employment practice, namely his termination.

202.     Accordingly, Plaintiff seeks all lawful remedies under the applicable statutes,
including but not limited to back pay, front pay, compensatory damages, punitive damages,
attorneys' fees, administrative costs, and all other relief that this Court deems just and proper.

**TENTH CAUSE OF ACTION**
**VIOLATIONS OF TITLE VII (NATIONAL ORIGIN)**
**AGAINST DEFENDANT LEONARD**

203.     Plaintiff repeats and realleges Paragraphs 1 through __ of the Complaint as if
fully set forth herein.

204.     In order to sufficiently allege a *prima facie* case under Title VII: i) an individual
demonstrates that he/she is a member of a protected class; ii) an individual demonstrates that
his/her employer knew or had reason to know that said individual is a member of a protected
class; iii) an individual was caused to suffer from an adverse employment action effectuated by
his/her employer; and iv) his/her employer effectuated said adverse employment action as a
result of an individual's membership in a protected class.     *See McDonnell Douglas Corp. v.
Green*, 411 U.S. 792 (1973).

30

205.    Plaintiff spent most of his life in Israel, being raised in that country; he received his undergraduate and graduate degrees from educational institutions in Israel; and he served in the IDF.

206.    Defendants were well aware of Plaintiff's national origin, as such matters were disclosed on Plaintiff's resume, and were discussed amongst his supervisors, including but not limited to Defendant Leonard and Defendant Lyons.

207.    On September 2, 2014, Plaintiff was terminated from his employment with Defendant FXCM.

208.    Prior to said termination, Defendants relentlessly and callously mocked Plaintiff during a period of tumult in the ongoing Israeli/Palestinian conflict, when rockets were being launched into Israeli territory.

209.    Further, Plaintiff, whose grandfather and grandmother were prisoners in labor/death camps established by the German National Socialist Party during World War II, was subjected to ridicule by one of his coworkers at Defendant FXCM, who "proudly" claimed that his ancestor was a guard at the Auschwitz labor/death camp, and who indicated that "[Adolf] Hitler never finished" his final solution.

210.    Accordingly, the impetus of Plaintiff's termination was his national origin.

211.    Finally, at all times relevant hereto, Plaintiff was and still is capable of performing the tasks to which he had been previously assigned, and prior to his termination, had previously performed said tasks without incident.

212.    Based upon the foregoing, and given the fact that Plaintiff has satisfied its "minimal burden," *Vuona v. Merrill Lynch & Co., Inc.*, 919 F.Supp.2d 359 (S.D.N.Y. 2013), Plaintiff has sufficiently alleged that he was subjected to a discriminatory employment practice,

31

namely his termination, and said termination was caused by and/or resulted from Plaintiff's membership in a protected class of employees, namely his national origin.

213.    Accordingly, Plaintiff seeks all lawful remedies under the applicable statutes, including but not limited to back pay, front pay, compensatory damages, punitive damages, attorneys' fees, administrative costs, and all other relief that this Court deems just and proper.

### ELEVENTH CAUSE OF ACTION
### VIOLATIONS OF TITLE VII (RELIGION)
### AGAINST DEFENDANT LEONARD

214.    Plaintiff repeats and realleges Paragraphs 1 through __ of the Complaint as if fully set forth herein.

215.    In order to sufficiently allege a *prima facie* case under Title VII: i) an individual demonstrates that he/she is a member of a protected class; ii) an individual demonstrates that his/her employer knew or had reason to know that said individual is a member of a protected class; iii) an individual was caused to suffer from an adverse employment action effectuated by his/her employer; and iv) his/her employer effectuated said adverse employment action as a result of an individual's membership in a protected class.    *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

216.    Plaintiff was born into, raised, and continues to be a practicing member of the Jewish religion.

217.    Defendants knew of Plaintiff's religion because such matter was discussed during Plaintiff's initial interview with Defendants, during which time Plaintiff indicated that he was available to work on weekends, on an emergency basis, provided such work duties did not interfere with his religious obligations.

32

218.    On September 2, 2014, Plaintiff was terminated from his employment with Defendant FXCM.

219.    Prior to said termination, Plaintiff was ridiculed by individuals, including Defendant Leonard, for the fact that he abstained from eating pork products, such as ham, bacon, and sausage.

220.    Defendant Leonard taunted Plaintiff for such abstention by placing pork products in and around Plaintiff's work space.

221.    Further, when Plaintiff asked to take a day off for Yom Kippur, which is the highest of all holy days in the Jewish faith, Defendant Leonard informed Plaintiff that he could not, and that Plaintiff's religious obligations, such as Plaintiff's religious observation of Yom Kippur, was a reason why Defendant Leonard did not want to hire Plaintiff.

222.    Additionally, Plaintiff was never granted to access to the prayer room, located in the offices of Defendant FXCM, and was never invited to participate in a minyan.

223.    Accordingly, the impetus for Plaintiff's termination was his religion.

224.    Finally, at all times relevant hereto, Plaintiff was and still is capable of performing the tasks to which he had been previously assigned, and prior to his termination, had previously performed said tasks without incident.

225.    Based upon the foregoing, and given the fact that Plaintiff has satisfied its "minimal burden," *Vuona v. Merrill Lynch & Co., Inc.*, 919 F.Supp.2d 359 (S.D.N.Y. 2013), Plaintiff has sufficiently alleged that he was subjected to a discriminatory employment practice, namely his termination, and said termination was caused by and/or resulted from Plaintiff's membership in a protected class of employees, namely his religion.

33

226. Accordingly, Plaintiff seeks all lawful remedies under the applicable statutes, including but not limited to back pay, front pay, compensatory damages, punitive damages, attorneys' fees, administrative costs, and all other relief that this Court deems just and proper.

## TWELFTH CAUSE OF ACTION
## VIOLATIONS OF TITLE VII (SEXUAL HARRASMENT)
## AGAINST DEFENDANT LEONARD

227. Plaintiff repeats and realleges Paragraphs 1 through __ of the Complaint as if fully set forth herein.

228. To establish a *prima facie* claim of sexual harassment and hostile work environment, plaintiff must establish: 1) that the workplace was permeated with discriminatory intimidation that was sufficiently severe or pervasive to alter the conditions of her work environment and, 2) that a specific basis exists for imputing the conduct that created the hostile environment to the employer. *Van Zant v. KLM Royal Dutch Airlines*, 80 F.3d 708 (2d Cir. 1996).

229. When determining whether the workplace conduct rises to the level of a hostile work environment, "the Court must consider the frequency and severity of the discriminatory conduct, whether the conduct is physically threatening or humiliating, and whether the conduct unreasonably interferes with the plaintiff's work performance." *Salmon v. Pilant Corp.*, 965 F.Supp.2d 302 (W.D.N.Y. 2013).

230. After establishing the conduct complained of therein constituted sexual harassment, a plaintiff must show that this conduct can be imputed onto the employer. *See Harris v. Forklift Systems, Inc.*, 510 U.S. 17 (1993).

231. Although employers are not automatically liable for the conduct if its employees, an employer is liable for the actions of its supervisory staff, *see Kotcher v. Rosa and Sullivan*

34

*Appliance Ctr., Inc.*, 957 F.2d 59 (2d Cir. 1992), as well as its own negligence. *See Faragher v. City of Boca Raton*, 524 U.S. 775 (1998).

232.    During Plaintiff's tenure with Defendant FXCM, his work environment was sufficiently severe and pervasive with sexually charged material and intimidation.

233.    Defendant Leonard wrote on the white board in the IT Department: "Alon is a dick. Why won't he shut the fuck up? That is all asshole."

234.    Despite Plaintiff's multiple requests that the posting be removed, it remained for nearly two months, and no other employee in the IT Department was ever the target of such a message on the white board.

235.    Also, during Plaintiff's tenure with Defendant FXCM, Defendant Leonard, deliberately and without permission, changed the background on Plaintiff's computer to a graphic, sexually-explicit image of a naked male with an erect penis, spreading his buttocks, with two hands, to expose his internal anatomy.

236.    Defendant Leonard also took a photograph of Plaintiff and digitally drew onto the photograph the depiction of an individual placing his erect penis in front of Plaintiff's mouth to simulate oral sex and defecation of feces onto Plaintiff's head; and this image was transmitted by Defendant Leonard to all employees in the IT Department.

237.    In addition, Plaintiff was exposed to and often berated with such phrases and depictions of terms such as "tub girl," "meat spin," "lemon party," and "goatse"; Plaintiff was unfamiliar with these terms until he began working for Defendants.

238.    The above-enunciated behavior created a hostile work environment for Plaintiff, reasonably interfered with Plaintiff's work performance, and was perpetrated by Plaintiff's direct and indirect supervisors, namely Defendant Lyons and Defendant Leonard.

3201233.1

239.    Based upon the foregoing, and given the fact that Plaintiff has satisfied its "minimal burden," *Vuona v. Merrill Lynch & Co., Inc.*, 919 F.Supp.2d 359 (S.D.N.Y. 2013), Plaintiff has sufficiently alleged that he was subjected to a discriminatory employment practice, namely his termination.

240.    Accordingly, Plaintiff seeks all lawful remedies under the applicable statutes, including but not limited to back pay, front pay, compensatory damages, punitive damages, attorneys' fees, administrative costs, and all other relief that this Court deems just and proper.

## THIRTEENTH CAUSE OF ACTION
## VIOLATIONS OF NYSHRL (NATIONAL ORIGIN)
## AGAINST DEFENDANT LEONARD

241.    Plaintiff repeats and realleges Paragraphs 1 through __ of the Complaint as if fully set forth herein.

242.    Causes of actions alleging violations of NYSHRL §§ 290 and 296 are treated in a similar manner to causes of action alleging violations of Title VII. *See Ferrante v. American Lung Assn.*, 90 N.Y.2d 623 (1997); *See also Kersul v. Skulls Angels, Inc.*, 130 Misc.2d 345 (Sup. Ct., Queens Co. 1985).

243.    Pursuant to NYSHRL §§ 290 and 296, a *prima facie* case is alleged if: i) a plaintiff demonstrates that he/she is a member of a protected class; ii) a plaintiff demonstrates that defendants knew or had reason to know that a plaintiff is a member of a protected class; iii) a plaintiff was caused to suffer from an adverse employment action effectuated by defendants; iv) defendants effectuated said adverse employment action as a result of plaintiff's membership in a protected class.  *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

3201233.1

244.    Plaintiff spent most of his life in Israel, being raised in that country; he received his undergraduate and graduate degrees from educational institutions in Israel; and he served in the IDF.

245.    Defendants were well aware of Plaintiff's national origin, as such matters were disclosed on Plaintiff's resume, and were discussed amongst his supervisors, including but not limited to Defendant Leonard and Defendant Lyons.

246.    On September 2, 2014, Plaintiff was terminated from his employment with Defendant FXCM.

247.    Prior to said termination, Defendants relentlessly and callously mocked Plaintiff during a period of tumult in the ongoing Israeli/Palestinian conflict, when rockets were being launched into Israeli territory.

248.    Further, Plaintiff, whose grandfather and grandmother were prisoners in labor/death camps established by the German National Socialist Party during World War II, was subjected to ridicule by one of his coworkers at Defendant FXCM, who "proudly" claimed that his ancestor was a guard at the Auschwitz labor/death camp, and who indicated that "[Adolf] Hitler never finished" his final solution.

249.    Accordingly, the impetus of Plaintiff's termination was his national origin.

250.    Finally, at all times relevant hereto, Plaintiff was and still is capable of performing the tasks to which he had been previously assigned, and prior to his termination, had previously performed said tasks without incident.

251.    Based upon the foregoing, and given the fact that Plaintiff has satisfied its "minimal burden," *Vuona v. Merrill Lynch & Co., Inc.*, 919 F.Supp.2d 359 (S.D.N.Y. 2013), Plaintiff has sufficiently alleged that he was subjected to a discriminatory employment practice,

37

namely his termination, and said termination was caused by and/or resulted from Plaintiff's membership in a protected class of employees, namely his national origin.

252.    Accordingly, Plaintiff seeks all lawful remedies under the applicable statutes, including but not limited to back pay, front pay, compensatory damages, punitive damages, attorneys' fees, administrative costs, and all other relief that this Court deems just and proper.

## FOURTEENTH CAUSE OF ACTION
## VIOLATIONS OF NYSHRL (RELIGION)
## AGAINST DEFENDANT LEONARD

253.    Plaintiff repeats and realleges Paragraphs 1 through __ of the Complaint as if fully set forth herein.

254.    Causes of actions alleging violations of NYSHRL §§ 290 and 296 are treated in a similar manner to causes of action alleging violations of Title VII.  *See Ferrante v. American Lung Assn.*, 90 N.Y.2d 623 (1997); *See also Kersul v. Skulls Angels, Inc.*, 130 Misc.2d 345 (Sup. Ct., Queens Co. 1985).

255.    Pursuant to NYSHRL §§ 290 and 296, a *prima facie* case is alleged if: i) a plaintiff demonstrates that he/she is a member of a protected class; ii) a plaintiff demonstrates that defendants knew or had reason to know that a plaintiff is a member of a protected class; iii) a plaintiff was caused to suffer from an adverse employment action effectuated by defendants; iv) defendants effectuated said adverse employment action as a result of plaintiff's membership in a protected class.  *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

256.    Plaintiff was born into, raised, and continues to be a practicing member of the Jewish religion.

257.    Defendants knew of Plaintiff's religion because such matter was discussed during Plaintiff's initial interview with Defendants, during which time Plaintiff indicated that he was

38

available to work on weekends, on an emergency basis, provided such work duties did not interfere with his religious obligations.

258.     On September 2, 2014, Plaintiff was terminated from his employment with Defendant FXCM.

259.     Prior to said termination, Plaintiff was ridiculed by individuals, including Defendant Leonard, for the fact that he abstained from eating pork products, such as ham, bacon, and sausage.

260.     Defendant Leonard taunted Plaintiff for such abstention by placing pork products in and around Plaintiff's work space.

261.     Further, when Plaintiff asked to take a day off for Yom Kippur, which is the highest of all holy days in the Jewish faith, Defendant Leonard informed Plaintiff that he could not, and that Plaintiff's religious obligations, such as Plaintiff's religious observation of Yom Kippur, was a reason why Defendant Leonard did not want to hire Plaintiff.

262.     Additionally, Plaintiff was never granted to access to the prayer room, located in the offices of Defendant FXCM, and was never invited to participate in a minyan.

263.     Accordingly, the impetus for Plaintiff's termination was his religion.

264.     Finally, at all times relevant hereto, Plaintiff was and still is capable of performing the tasks to which he had been previously assigned, and prior to his termination, had previously performed said tasks without incident.

265.     Based upon the foregoing, and given the fact that Plaintiff has satisfied its "minimal burden," *Vuona v. Merrill Lynch & Co., Inc.*, 919 F.Supp.2d 359 (S.D.N.Y. 2013), Plaintiff has sufficiently alleged that he was subjected to a discriminatory employment practice,

39

namely his termination, and said termination was caused by and/or resulted from Plaintiff's membership in a protected class of employees, namely his religion.

266.    Accordingly, Plaintiff seeks all lawful remedies under the applicable statutes, including but not limited to back pay, front pay, compensatory damages, punitive damages, attorneys' fees, administrative costs, and all other relief that this Court deems just and proper.

**FIFTEENTH CAUSE OF ACTION**
**VIOLATIONS OF NYSHRL (SEXUAL HARRASMENT)**
**AGAINST DEFENDANT LEONARD**

267.    Plaintiff repeats and realleges Paragraphs 1 through __ of the Complaint as if fully set forth herein.

268.    Causes of actions alleging violations of NYSHRL §§ 290 and 296 are treated in a similar manner to causes of action alleging violations of Title VII.  *See Ferrante v. American Lung Assn.*, 90 N.Y.2d 623 (1997); *See also Kersul v. Skulls Angels, Inc.*, 130 Misc.2d 345 (Sup. Ct., Queens Co. 1985).

269.    To establish a *prima facie* claim of sexual harassment and hostile work environment, plaintiff must establish: 1) that the workplace was permeated with discriminatory intimidation that was sufficiently severe or pervasive to alter the conditions of her work environment and, 2) that a specific basis exists for imputing the conduct that created the hostile environment to the employer.  *Father Belle Comm. Ctr. v. N.Y.S. Div. of Human Rights*, 221 A.D.2d 44 (4th Dept. 1996).

270.    When determining whether the workplace conduct rises to the level of a hostile work environment, "the Court must consider the frequency and severity of the discriminatory conduct, whether the conduct is physically threatening or humiliating, and whether the conduct

40

unreasonably interferes with the plaintiff's work performance." *Salmon v. Pilant Corp.*, 965 F.Supp.2d 302 (W.D.N.Y. 2013).

271.    After establishing the conduct complained of therein constituted sexual harassment, a plaintiff must show that this conduct can be imputed onto the employer. *See Thomas v. Tam Equities, Inc.*, 6 Misc.3d 1021(A) (Sup. Ct. Queens Co. 2005).

272.    Although employers are not automatically liable for the conduct if its employees, an employer is liable for the actions of its supervisory staff, *see Kotcher v. Rosa and Sullivan Appliance Ctr., Inc.*, 957 F.2d 59 (2d Cir. 1992), as well as its own negligence. *See Faragher v. City of Boca Raton*, 524 U.S. 775 (1998).

273.    During Plaintiff's tenure with Defendant FXCM, his work environment was sufficiently severe and pervasive with sexually charged material and intimidation.

274.    Defendant Leonard wrote on the white board in the IT Department:  "Alon is a dick.  Why won't he shut the fuck up?  That is all asshole."

275.    Despite Plaintiff's multiple requests that the posting be removed, it remained for nearly two months, and no other employee in the IT Department was ever the target of such a message on the white board.

276.    Also, during Plaintiff's tenure with Defendant FXCM, Defendant Leonard, deliberately and without permission, changed the background on Plaintiff's computer to a graphic, sexually-explicit image of a naked male with an erect penis, spreading his buttocks, with two hands, to expose his internal anatomy.

277.    Defendant Leonard also took a photograph of Plaintiff and digitally drew onto the photograph the depiction of an individual placing his erect penis in front of Plaintiff's mouth to

41

simulate oral sex and defecation of feces onto Plaintiff's head; and this image was transmitted by Defendant Leonard to all employees in the IT Department.

278.    In addition, Plaintiff was exposed to and often berated with such phrases and depictions of terms such as "tub girl," "meat spin," "lemon party," and "goatse"; Plaintiff was unfamiliar with these terms until he began working for Defendants.

279.    The above-enunciated behavior created a hostile work environment for Plaintiff, reasonably interfered with Plaintiff's work performance, and was perpetrated by Plaintiff's direct and indirect supervisors, namely Defendant Lyons and Defendant Leonard.

280.    Based upon the foregoing, and given the fact that Plaintiff has satisfied its "minimal burden," *Vuona v. Merrill Lynch & Co., Inc.*, 919 F.Supp.2d 359 (S.D.N.Y. 2013), Plaintiff has sufficiently alleged that he was subjected to a discriminatory employment practice, namely his termination.

281.    Accordingly, Plaintiff seeks all lawful remedies under the applicable statutes, including but not limited to back pay, front pay, compensatory damages, punitive damages, attorneys' fees, administrative costs, and all other relief that this Court deems just and proper.

**SIXTEENTH CAUSE OF ACTION**
**VIOLATIONS OF NYCHRL (NATIONAL ORIGIN)**
**AGAINST DEFENDANT LEONARD**

282.    Plaintiff repeats and realleges Paragraphs 1 through __ of the Complaint as if fully set forth herein.

283.    In order to establish a *prima facie* claim under the NYCHRL, it must be alleged that: i) an individual demonstrates that he/she is a member of a protected class; ii) an individual demonstrates that his/her employer knew or had reason to know that said individual is a member of a protected class; iii) an individual was caused to suffer from an adverse employment action

42

effectuated by his/her employer; and iv) his/her employer effectuated said adverse employment action as a result of said individual's membership in a protected class.   *See Levin v. Yeshiva Univ.*, 96 N.Y.2d 484 (2001).

284.    Plaintiff spent most of his life in Israel, being raised in that country; he received his undergraduate and graduate degrees from educational institutions in Israel; and he served in the IDF.

285.    Defendants were well aware of Plaintiff's national origin, as such matters were disclosed on Plaintiff's resume, and were discussed amongst his supervisors, including but not limited to Defendant Leonard and Defendant Lyons.

286.    On September 2, 2014, Plaintiff was terminated from his employment with Defendant FXCM.

287.    Prior to said termination, Defendants relentlessly and callously mocked Plaintiff during a period of tumult in the ongoing Israeli/Palestinian conflict, when rockets were being launched into Israeli territory.

288.    Further, Plaintiff, whose grandfather and grandmother were prisoners in labor/death camps established by the German National Socialist Party during World War II, was subjected to ridicule by one of his coworkers at Defendant FXCM, who "proudly" claimed that his ancestor was a guard at the Auschwitz labor/death camp, and who indicated that "[Adolf] Hitler never finished" his final solution.

289.    Accordingly, the impetus of Plaintiff's termination was his national origin.

290.    Finally, at all times relevant hereto, Plaintiff was and still is capable of performing the tasks to which he had been previously assigned, and prior to his termination, had previously performed said tasks without incident.

3201233.1

291.    Based upon the foregoing, and given the fact that Plaintiff has satisfied its initial burden, *see Stalker v. Stewart Tenants Corp.*, 2010 N.Y. Misc. LEXIS 6921, *7 (Sup. Ct. N.Y. Co. November 9, 2010), Plaintiff has sufficiently alleged that he was subjected to a discriminatory employment practice, namely his termination, and said termination was caused by and/or resulted from Plaintiff's national origin.

292.    Accordingly, Plaintiff seeks all lawful remedies under the applicable statutes, including but not limited to back pay, front pay, compensatory damages, punitive damages, attorneys' fees, administrative costs, and all other relief that this Court deems just and proper.

## SEVENTEENTH CAUSE OF ACTION
## VIOLATIONS OF NYCHRL (RELIGION)
## AGAINST DEFENDANT LEONARD

293.    Plaintiff repeats and realleges Paragraphs 1 through __ of the Complaint as if fully set forth herein.

294.    In order to establish a *prima facie* claim under the NYCHRL, it must be alleged that: i) an individual demonstrates that he/she is a member of a protected class; ii) an individual demonstrates that his/her employer knew or had reason to know that said individual is a member of a protected class; iii) an individual was caused to suffer from an adverse employment action effectuated by his/her employer; and iv) his/her employer effectuated said adverse employment action as a result of said individual's membership in a protected class.    *See Levin v. Yeshiva Univ.*, 96 N.Y.2d 484 (2001).

295.    Plaintiff was born into, raised, and continues to be a practicing member of the Jewish religion.

296.    Defendants knew of Plaintiff's religion because such matter was discussed during Plaintiff's initial interview with Defendants, during which time Plaintiff indicated that he was

44

available to work on weekends, on an emergency basis, provided such work duties did not interfere with his religious obligations.

297.    On September 2, 2014, Plaintiff was terminated from his employment with Defendant FXCM.

298.    Prior to said termination, Plaintiff was ridiculed by individuals, including Defendant Leonard, for the fact that he abstained from eating pork products, such as ham, bacon, and sausage.

299.    Defendant Leonard taunted Plaintiff for such abstention by placing pork products in and around Plaintiff's work space.

300.    Further, when Plaintiff asked to take a day off for Yom Kippur, which is the highest of all holy days in the Jewish faith, Defendant Leonard informed Plaintiff that he could not, and that Plaintiff's religious obligations, such as Plaintiff's religious observation of Yom Kippur, was a reason why Defendant Leonard did not want to hire Plaintiff.

301.    Additionally, Plaintiff was never granted to access to the prayer room, located in the offices of Defendant FXCM, and was never invited to participate in a minyan.

302.    Accordingly, the impetus for Plaintiff's termination was his religion.

303.    Finally, at all times relevant hereto, Plaintiff was and still is capable of performing the tasks to which he had been previously assigned, and prior to his termination, had previously performed said tasks without incident.

304.    Based upon the foregoing, and given the fact that Plaintiff has satisfied its initial burden, *see Stalker v. Stewart Tenants Corp.*, 2010 N.Y. Misc. LEXIS 6921, *7 (Sup. Ct. N.Y. Co. November 9, 2010), Plaintiff has sufficiently alleged that he was subjected to a

45

discriminatory employment practice, namely his termination, and said termination was caused by and/or resulted from Plaintiff's religion.

305.    Accordingly, Plaintiff seeks all lawful remedies under the applicable statutes, including but not limited to back pay, front pay, compensatory damages, punitive damages, attorneys' fees, administrative costs, and all other relief that this Court deems just and proper.

## EIGHTEENTH CAUSE OF ACTION
## VIOLATIONS OF NYCHRL (SEXUAL HARRASMENT)
## AGAINST DEFENDANT LEONARD

306.    Plaintiff repeats and realleges Paragraphs 1 through __ of the Complaint as if fully set forth herein.

307.    Under § 8-107(1)(a), it is an unlawful discriminatory practice for an employer, or an employee or agent thereof to discharge an employee because of his/her actual or perceived age, race, creed, color national origin, gender, disability, marital status, partnership status, sexual orientation or citizenship.

308.    To establish a *prima facie* case under the NYCHRL, "a plaintiff need not demonstrate that he or she was subjected to 'severe and pervasive' sexual harassment; plaintiff need only demonstrate that he/she 'has been treated less well than other employees because of his/her gender." *Davis v. Phoenix Ancient Art, S.A.*, 39 Misc3d 1214(A), *6 (Sup. Ct. N.Y. Co. 2013).

309.    In *Williams v. New York City Hous. Auth.*, 61 A.D.3d 62, 78 (1st Dept. 2009), the court determined that "the 'severe and pervasive' test reduces the incentive for employers to create workplaces that have zero tolerance for conduct demeaning to a worker."

310.    Further, "questions of severity or pervasiveness of the discriminatory conduct apply only to damages, not liability." *Williams*, at 76.

46

311.    During Plaintiff's tenure with Defendant FXCM, his work environment was sufficiently severe and pervasive with sexually charged material and intimidation.

312.    Defendant Leonard wrote on the white board in the IT Department: "Alon is a dick. Why won't he shut the fuck up? That is all asshole."

313.    Despite Plaintiff's multiple requests that the posting be removed, it remained for nearly two months, and no other employee in the IT Department was ever the target of such a message on the white board.

314.    Also, during Plaintiff's tenure with Defendant FXCM, Defendant Leonard, deliberately and without permission, changed the background on Plaintiff's computer to a graphic, sexually-explicit image of a naked male with an erect penis, spreading his buttocks, with two hands, to expose his internal anatomy.

315.    Defendant Leonard also took a photograph of Plaintiff and digitally drew onto the photograph the depiction of an individual placing his erect penis in front of Plaintiff's mouth to simulate oral sex and defecation of feces onto Plaintiff's head; and this image was transmitted by Defendant Leonard to all employees in the IT Department.

316.    In addition, Plaintiff was exposed to and often berated with such phrases and depictions of terms such as "tub girl," "meat spin," "lemon party," and "goatse"; Plaintiff was unfamiliar with these terms until he began working for Defendants.

317.    The above-enunciated behavior created a hostile work environment for Plaintiff, reasonably interfered with Plaintiff's work performance, and was perpetrated by Plaintiff's direct and indirect supervisors, namely Defendant Lyons and Defendant Leonard.

318.    Based upon the foregoing, and given the fact that Plaintiff has satisfied its initial burden, *see Stalker v. Stewart Tenants Corp.*, 2010 N.Y. Misc. LEXIS 6921, *7 (Sup. Ct. N.Y.

47

Co. November 9, 2010), Plaintiff has sufficiently alleged that he was subjected to a discriminatory employment practice, namely his termination.

319.    Accordingly, Plaintiff seeks all lawful remedies under the applicable statutes, including but not limited to back pay, front pay, compensatory damages, punitive damages, attorneys' fees, administrative costs, and all other relief that this Court deems just and proper.

### NINETEENTH CAUSE OF ACTION
### VIOLATIONS OF TITLE VII (NATIONAL ORIGIN)
### AGAINST DEFENDANT LYONS

320.    Plaintiff repeats and realleges Paragraphs 1 through __ of the Complaint as if fully set forth herein.

321.    In order to sufficiently allege a *prima facie* case under Title VII: i) an individual demonstrates that he/she is a member of a protected class; ii) an individual demonstrates that his/her employer knew or had reason to know that said individual is a member of a protected class; iii) an individual was caused to suffer from an adverse employment action effectuated by his/her employer; and iv) his/her employer effectuated said adverse employment action as a result of an individual's membership in a protected class.    *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

322.    Plaintiff spent most of his life in Israel, being raised in that country; he received his undergraduate and graduate degrees from educational institutions in Israel; and he served in the IDF.

323.    Defendants were well aware of Plaintiff's national origin, as such matters were disclosed on Plaintiff's resume, and were discussed amongst his supervisors, including but not limited to Defendant Leonard and Defendant Lyons.

48

324. On September 2, 2014, Plaintiff was terminated from his employment with Defendant FXCM.

325. Prior to said termination, Defendants relentlessly and callously mocked Plaintiff during a period of tumult in the ongoing Israeli/Palestinian conflict, when rockets were being launched into Israeli territory.

326. Further, Plaintiff, whose grandfather and grandmother were prisoners in labor/death camps established by the German National Socialist Party during World War II, was subjected to ridicule by one of his coworkers at Defendant FXCM, who "proudly" claimed that his ancestor was a guard at the Auschwitz labor/death camp, and who indicated that "[Adolf] Hitler never finished" his final solution.

327. Accordingly, the impetus of Plaintiff's termination was his national origin.

328. Finally, at all times relevant hereto, Plaintiff was and still is capable of performing the tasks to which he had been previously assigned, and prior to his termination, had previously performed said tasks without incident.

329. Based upon the foregoing, and given the fact that Plaintiff has satisfied its "minimal burden," *Vuona v. Merrill Lynch & Co., Inc.*, 919 F.Supp.2d 359 (S.D.N.Y. 2013), Plaintiff has sufficiently alleged that he was subjected to a discriminatory employment practice, namely his termination, and said termination was caused by and/or resulted from Plaintiff's membership in a protected class of employees, namely his national origin.

330. Accordingly, Plaintiff seeks all lawful remedies under the applicable statutes, including but not limited to back pay, front pay, compensatory damages, punitive damages, attorneys' fees, administrative costs, and all other relief that this Court deems just and proper.

49

## TWENTIETH CAUSE OF ACTION
## VIOLATIONS OF TITLE VII (RELIGION)
## AGAINST DEFENDANT LYONS

331.   Plaintiff repeats and realleges Paragraphs 1 through __ of the Complaint as if fully set forth herein.

332.   In order to sufficiently allege a *prima facie* case under Title VII: i) an individual demonstrates that he/she is a member of a protected class; ii) an individual demonstrates that his/her employer knew or had reason to know that said individual is a member of a protected class; iii) an individual was caused to suffer from an adverse employment action effectuated by his/her employer; and iv) his/her employer effectuated said adverse employment action as a result of an individual's membership in a protected class.   *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

333.   Plaintiff was born into, raised, and continues to be a practicing member of the Jewish religion.

334.   Defendants knew of Plaintiff's religion because such matter was discussed during Plaintiff's initial interview with Defendants, during which time Plaintiff indicated that he was available to work on weekends, on an emergency basis, provided such work duties did not interfere with his religious obligations.

335.   On September 2, 2014, Plaintiff was terminated from his employment with Defendant FXCM.

336.   Prior to said termination, Plaintiff was ridiculed by individuals, including Defendant Leonard, for the fact that he abstained from eating pork products, such as ham, bacon, and sausage.

50

3201233.1

337.   Defendant Leonard taunted Plaintiff for such abstention by placing pork products in and around Plaintiff's work space.

338.   Further, when Plaintiff asked to take a day off for Yom Kippur, which is the highest of all holy days in the Jewish faith, Defendant Leonard informed Plaintiff that he could not, and that Plaintiff's religious obligations, such as Plaintiff's religious observation of Yom Kippur, was a reason why Defendant Leonard did not want to hire Plaintiff.

339.   Additionally, Plaintiff was never granted to access to the prayer room, located in the offices of Defendant FXCM, and was never invited to participate in a minyan.

340.   Accordingly, the impetus for Plaintiff's termination was his religion.

341.   Finally, at all times relevant hereto, Plaintiff was and still is capable of performing the tasks to which he had been previously assigned, and prior to his termination, had previously performed said tasks without incident.

342.   Based upon the foregoing, and given the fact that Plaintiff has satisfied its "minimal burden," *Vuona v. Merrill Lynch & Co., Inc.*, 919 F.Supp.2d 359 (S.D.N.Y. 2013), Plaintiff has sufficiently alleged that he was subjected to a discriminatory employment practice, namely his termination, and said termination was caused by and/or resulted from Plaintiff's membership in a protected class of employees, namely his religion.

343.   Accordingly, Plaintiff seeks all lawful remedies under the applicable statutes, including but not limited to back pay, front pay, compensatory damages, punitive damages, attorneys' fees, administrative costs, and all other relief that this Court deems just and proper.

51

## TWENTY-FIRST CAUSE OF ACTION
## VIOLATIONS OF TITLE VII (SEXUAL HARRASMENT)
## AGAINST DEFENDANT LYONS

344.    Plaintiff repeats and realleges Paragraphs 1 through __ of the Complaint as if fully set forth herein.

345.    To establish a *prima facie* claim of sexual harassment and hostile work environment, plaintiff must establish: 1) that the workplace was permeated with discriminatory intimidation that was sufficiently severe or pervasive to alter the conditions of her work environment and, 2) that a specific basis exists for imputing the conduct that created the hostile environment to the employer. *Van Zant v. KLM Royal Dutch Airlines*, 80 F.3d 708 (2d Cir. 1996).

346.    When determining whether the workplace conduct rises to the level of a hostile work environment, "the Court must consider the frequency and severity of the discriminatory conduct, whether the conduct is physically threatening or humiliating, and whether the conduct unreasonably interferes with the plaintiff's work performance." *Salmon v. Pilant Corp.*, 965 F.Supp.2d 302 (W.D.N.Y. 2013).

347.    After establishing the conduct complained of therein constituted sexual harassment, a plaintiff must show that this conduct can be imputed onto the employer. *See Harris v. Forklift Systems, Inc.*, 510 U.S. 17 (1993).

348.    Although employers are not automatically liable for the conduct if its employees, an employer is liable for the actions of its supervisory staff, *see Kotcher v. Rosa and Sullivan Appliance Ctr., Inc.*, 957 F.2d 59 (2d Cir. 1992), as well as its own negligence. *See Faragher v. City of Boca Raton*, 524 U.S. 775 (1998).

3201233.1

349.    During Plaintiff's tenure with Defendant FXCM, his work environment was sufficiently severe and pervasive with sexually charged material and intimidation.

350.    Defendant Leonard wrote on the white board in the IT Department: "Alon is a dick. Why won't he shut the fuck up? That is all asshole."

351.    Despite Plaintiff's multiple requests that the posting be removed, it remained for nearly two months, and no other employee in the IT Department was ever the target of such a message on the white board.

352.    Also, during Plaintiff's tenure with Defendant FXCM, Defendant Leonard, deliberately and without permission, changed the background on Plaintiff's computer to a graphic, sexually-explicit image of a naked male with an erect penis, spreading his buttocks, with two hands, to expose his internal anatomy.

353.    Defendant Leonard also took a photograph of Plaintiff and digitally drew onto the photograph the depiction of an individual placing his erect penis in front of Plaintiff's mouth to simulate oral sex and defecation of feces onto Plaintiff's head; and this image was transmitted by Defendant Leonard to all employees in the IT Department.

354.    In addition, Plaintiff was exposed to and often berated with such phrases and depictions of terms such as "tub girl," "meat spin," "lemon party," and "goatse"; Plaintiff was unfamiliar with these terms until he began working for Defendants.

355.    The above-enunciated behavior created a hostile work environment for Plaintiff, reasonably interfered with Plaintiff's work performance, and was perpetrated by Plaintiff's direct and indirect supervisors, namely Defendant Lyons and Defendant Leonard.

356.    Based upon the foregoing, and given the fact that Plaintiff has satisfied its "minimal burden," *Vuona v. Merrill Lynch & Co., Inc.*, 919 F.Supp.2d 359 (S.D.N.Y. 2013),

3201233.1

Plaintiff has sufficiently alleged that he was subjected to a discriminatory employment practice, namely his termination.

357.    Accordingly, Plaintiff seeks all lawful remedies under the applicable statutes, including but not limited to back pay, front pay, compensatory damages, punitive damages, attorneys' fees, administrative costs, and all other relief that this Court deems just and proper.

**TWENTY-SECOND CAUSE OF ACTION**
**VIOLATIONS OF NYSHRL (NATIONAL ORIGIN)**
**AGAINST DEFENDANT LYONS**

358.    Plaintiff repeats and realleges Paragraphs 1 through __ of the Complaint as if fully set forth herein.

359.    Causes of actions alleging violations of NYSHRL §§ 290 and 296 are treated in a similar manner to causes of action alleging violations of Title VII.  *See Ferrante v. American Lung Assn.*, 90 N.Y.2d 623 (1997); *See also Kersul v. Skulls Angels, Inc.*, 130 Misc.2d 345 (Sup. Ct., Queens Co. 1985).

360.    Pursuant to NYSHRL §§ 290 and 296, a *prima facie* case is alleged if: i) a plaintiff demonstrates that he/she is a member of a protected class; ii) a plaintiff demonstrates that defendants knew or had reason to know that a plaintiff is a member of a protected class; iii) a plaintiff was caused to suffer from an adverse employment action effectuated by defendants; iv) defendants effectuated said adverse employment action as a result of plaintiff's membership in a protected class.  *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

361.    Plaintiff spent most of his life in Israel, being raised in that country; he received his undergraduate and graduate degrees from educational institutions in Israel; and he served in the IDF.

54

362.    Defendants were well aware of Plaintiff's national origin, as such matters were disclosed on Plaintiff's resume, and were discussed amongst his supervisors, including but not limited to Defendant Leonard and Defendant Lyons.

363.    On September 2, 2014, Plaintiff was terminated from his employment with Defendant FXCM.

364.    Prior to said termination, Defendants relentlessly and callously mocked Plaintiff during a period of tumult in the ongoing Israeli/Palestinian conflict, when rockets were being launched into Israeli territory.

365.    Further, Plaintiff, whose grandfather and grandmother were prisoners in labor/death camps established by the German National Socialist Party during World War II, was subjected to ridicule by one of his coworkers at Defendant FXCM, who "proudly" claimed that his ancestor was a guard at the Auschwitz labor/death camp, and who indicated that "[Adolf] Hitler never finished" his final solution.

366.    Accordingly, the impetus of Plaintiff's termination was his national origin.

367.    Finally, at all times relevant hereto, Plaintiff was and still is capable of performing the tasks to which he had been previously assigned, and prior to his termination, had previously performed said tasks without incident.

368.    Based upon the foregoing, and given the fact that Plaintiff has satisfied its "minimal burden," *Vuona v. Merrill Lynch & Co., Inc.*, 919 F.Supp.2d 359 (S.D.N.Y. 2013), Plaintiff has sufficiently alleged that he was subjected to a discriminatory employment practice, namely his termination, and said termination was caused by and/or resulted from Plaintiff's membership in a protected class of employees, namely his national origin.

55

369.    Accordingly, Plaintiff seeks all lawful remedies under the applicable statutes, including but not limited to back pay, front pay, compensatory damages, punitive damages, attorneys' fees, administrative costs, and all other relief that this Court deems just and proper.

## TWENTY-THIRD CAUSE OF ACTION
## VIOLATIONS OF NYSHRL (RELIGION)
## AGAINST DEFENDANT LYONS

370.    Plaintiff repeats and realleges Paragraphs 1 through __ of the Complaint as if fully set forth herein.

371.    Causes of actions alleging violations of NYSHRL §§ 290 and 296 are treated in a similar manner to causes of action alleging violations of Title VII. *See Ferrante v. American Lung Assn.*, 90 N.Y.2d 623 (1997); *See also Kersul v. Skulls Angels, Inc.*, 130 Misc.2d 345 (Sup. Ct., Queens Co. 1985).

372.    Pursuant to NYSHRL §§ 290 and 296, a *prima facie* case is alleged if: i) a plaintiff demonstrates that he/she is a member of a protected class; ii) a plaintiff demonstrates that defendants knew or had reason to know that a plaintiff is a member of a protected class; iii) a plaintiff was caused to suffer from an adverse employment action effectuated by defendants; iv) defendants effectuated said adverse employment action as a result of plaintiff's membership in a protected class. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

373.    Plaintiff was born into, raised, and continues to be a practicing member of the Jewish religion.

374.    Defendants knew of Plaintiff's religion because such matter was discussed during Plaintiff's initial interview with Defendants, during which time Plaintiff indicated that he was available to work on weekends, on an emergency basis, provided such work duties did not interfere with his religious obligations.

56

375.    On September 2, 2014, Plaintiff was terminated from his employment with Defendant FXCM.

376.    Prior to said termination, Plaintiff was ridiculed by individuals, including Defendant Leonard, for the fact that he abstained from eating pork products, such as ham, bacon, and sausage.

377.    Defendant Leonard taunted Plaintiff for such abstention by placing pork products in and around Plaintiff's work space.

378.    Further, when Plaintiff asked to take a day off for Yom Kippur, which is the highest of all holy days in the Jewish faith, Defendant Leonard informed Plaintiff that he could not, and that Plaintiff's religious obligations, such as Plaintiff's religious observation of Yom Kippur, was a reason why Defendant Leonard did not want to hire Plaintiff.

379.    Additionally, Plaintiff was never granted to access to the prayer room, located in the offices of Defendant FXCM, and was never invited to participate in a minyan.

380.    Accordingly, the impetus for Plaintiff's termination was his religion.

381.    Finally, at all times relevant hereto, Plaintiff was and still is capable of performing the tasks to which he had been previously assigned, and prior to his termination, had previously performed said tasks without incident.

382.    Based upon the foregoing, and given the fact that Plaintiff has satisfied its "minimal burden," *Vuona v. Merrill Lynch & Co., Inc.*, 919 F.Supp.2d 359 (S.D.N.Y. 2013), Plaintiff has sufficiently alleged that he was subjected to a discriminatory employment practice, namely his termination, and said termination was caused by and/or resulted from Plaintiff's membership in a protected class of employees, namely his religion.

57

383.     Accordingly, Plaintiff seeks all lawful remedies under the applicable statutes, including but not limited to back pay, front pay, compensatory damages, punitive damages, attorneys' fees, administrative costs, and all other relief that this Court deems just and proper.

## TWENTY-FOURTH CAUSE OF ACTION
## VIOLATIONS OF NYSHRL (SEXUAL HARRASMENT)
## AGAINST DEFENDANT LYONS

384.     Plaintiff repeats and realleges Paragraphs 1 through __ of the Complaint as if fully set forth herein.

385.     Causes of actions alleging violations of NYSHRL §§ 290 and 296 are treated in a similar manner to causes of action alleging violations of Title VII. *See Ferrante v. American Lung Assn.*, 90 N.Y.2d 623 (1997); *See also Kersul v. Skulls Angels, Inc.*, 130 Misc.2d 345 (Sup. Ct., Queens Co. 1985).

386.     To establish a *prima facie* claim of sexual harassment and hostile work environment, plaintiff must establish: 1) that the workplace was permeated with discriminatory intimidation that was sufficiently severe or pervasive to alter the conditions of her work environment and, 2) that a specific basis exists for imputing the conduct that created the hostile environment to the employer. *Father Belle Comm. Ctr. v. N.Y.S. Div. of Human Rights*, 221 A.D.2d 44 (4th Dept. 1996).

387.     When determining whether the workplace conduct rises to the level of a hostile work environment, "the Court must consider the frequency and severity of the discriminatory conduct, whether the conduct is physically threatening or humiliating, and whether the conduct unreasonably interferes with the plaintiff's work performance." *Salmon v. Pilant Corp.*, 965 F.Supp.2d 302 (W.D.N.Y. 2013).

58

3201233.1

388.    After establishing the conduct complained of therein constituted sexual harassment, a plaintiff must show that this conduct can be imputed onto the employer. *See Thomas v. Tam Equities, Inc.*, 6 Misc.3d 1021(A) (Sup. Ct. Queens Co. 2005).

389.    Although employers are not automatically liable for the conduct if its employees, an employer is liable for the actions of its supervisory staff, *see Kotcher v. Rosa and Sullivan Appliance Ctr., Inc.*, 957 F.2d 59 (2d Cir. 1992), as well as its own negligence. *See Faragher v. City of Boca Raton*, 524 U.S. 775 (1998).

390.    During Plaintiff's tenure with Defendant FXCM, his work environment was sufficiently severe and pervasive with sexually charged material and intimidation.

391.    Defendant Leonard wrote on the white board in the IT Department:  "Alon is a dick. Why won't he shut the fuck up? That is all asshole."

392.    Despite Plaintiff's multiple requests that the posting be removed, it remained for nearly two months, and no other employee in the IT Department was ever the target of such a message on the white board.

393.    Also, during Plaintiff's tenure with Defendant FXCM, Defendant Leonard, deliberately and without permission, changed the background on Plaintiff's computer to a graphic, sexually-explicit image of a naked male with an erect penis, spreading his buttocks, with two hands, to expose his internal anatomy.

394.    Defendant Leonard also took a photograph of Plaintiff and digitally drew onto the photograph the depiction of an individual placing his erect penis in front of Plaintiff's mouth to simulate oral sex and defecation of feces onto Plaintiff's head; and this image was transmitted by Defendant Leonard to all employees in the IT Department.

59

395.    In addition, Plaintiff was exposed to and often berated with such phrases and depictions of terms such as "tub girl," "meat spin," "lemon party," and "goatse"; Plaintiff was unfamiliar with these terms until he began working for Defendants.

396.    The above-enunciated behavior created a hostile work environment for Plaintiff, reasonably interfered with Plaintiff's work performance, and was perpetrated by Plaintiff's direct and indirect supervisors, namely Defendant Lyons and Defendant Leonard.

397.    Based upon the foregoing, and given the fact that Plaintiff has satisfied its "minimal burden," *Vuona v. Merrill Lynch & Co., Inc.*, 919 F.Supp.2d 359 (S.D.N.Y. 2013), Plaintiff has sufficiently alleged that he was subjected to a discriminatory employment practice, namely his termination.

398.    Accordingly, Plaintiff seeks all lawful remedies under the applicable statutes, including but not limited to back pay, front pay, compensatory damages, punitive damages, attorneys' fees, administrative costs, and all other relief that this Court deems just and proper.

## TWENTY-FIFTH CAUSE OF ACTION
## VIOLATIONS OF NYCHRL (NATIONAL ORIGIN)
## AGAINST DEFENDANT LYONS

399.    Plaintiff repeats and realleges Paragraphs 1 through ___ of the Complaint as if fully set forth herein.

400.    In order to establish a *prima facie* claim under the NYCHRL, it must be alleged that: i) an individual demonstrates that he/she is a member of a protected class; ii) an individual demonstrates that his/her employer knew or had reason to know that said individual is a member of a protected class; iii) an individual was caused to suffer from an adverse employment action effectuated by his/her employer; and iv) his/her employer effectuated said adverse employment

action as a result of said individual's membership in a protected class.   *See Levin v. Yeshiva Univ.*, 96 N.Y.2d 484 (2001).

401.    Plaintiff spent most of his life in Israel, being raised in that country; he received his undergraduate and graduate degrees from educational institutions in Israel; and he served in the IDF.

402.    Defendants were well aware of Plaintiff's national origin, as such matters were disclosed on Plaintiff's resume, and were discussed amongst his supervisors, including but not limited to Defendant Leonard and Defendant Lyons.

403.    On September 2, 2014, Plaintiff was terminated from his employment with Defendant FXCM.

404.    Prior to said termination, Defendants relentlessly and callously mocked Plaintiff during a period of tumult in the ongoing Israeli/Palestinian conflict, when rockets were being launched into Israeli territory.

405.    Further, Plaintiff, whose grandfather and grandmother were prisoners in labor/death camps established by the German National Socialist Party during World War II, was subjected to ridicule by one of his coworkers at Defendant FXCM, who "proudly" claimed that his ancestor was a guard at the Auschwitz labor/death camp, and who indicated that "[Adolf] Hitler never finished" his final solution.

406.    Accordingly, the impetus of Plaintiff's termination was his national origin.

407.    Finally, at all times relevant hereto, Plaintiff was and still is capable of performing the tasks to which he had been previously assigned, and prior to his termination, had previously performed said tasks without incident.

3201233.1

408.    Based upon the foregoing, and given the fact that Plaintiff has satisfied its initial

burden, *see Stalker v. Stewart Tenants Corp.*, 2010 N.Y. Misc. LEXIS 6921, *7 (Sup. Ct. N.Y.

Co. November 9, 2010), Plaintiff has sufficiently alleged that he was subjected to a

discriminatory employment practice, namely his termination, and said termination was caused by

and/or resulted from Plaintiff's national origin.

409.    Accordingly, Plaintiff seeks all lawful remedies under the applicable statutes,

including but not limited to back pay, front pay, compensatory damages, punitive damages,

attorneys' fees, administrative costs, and all other relief that this Court deems just and proper.

**TWENTY-SIXTH CAUSE OF ACTION**
**VIOLATIONS OF NYCHRL (RELIGION)**
**AGAINST DEFENDANT LYONS**

410.    Plaintiff repeats and realleges Paragraphs 1 through __ of the Complaint as if

fully set forth herein.

411.    In order to establish a *prima facie* claim under the NYCHRL, it must be alleged

that: i) an individual demonstrates that he/she is a member of a protected class; ii) an individual

demonstrates that his/her employer knew or had reason to know that said individual is a member

of a protected class; iii) an individual was caused to suffer from an adverse employment action

effectuated by his/her employer; and iv) his/her employer effectuated said adverse employment

action as a result of said individual's membership in a protected class.    *See Levin v. Yeshiva*

*Univ.*, 96 N.Y.2d 484 (2001).

412.    Plaintiff was born into, raised, and continues to be a practicing member of the

Jewish religion.

413.    Defendants knew of Plaintiff's religion because such matter was discussed during

Plaintiff's initial interview with Defendants, during which time Plaintiff indicated that he was

62

available to work on weekends, on an emergency basis, provided such work duties did not interfere with his religious obligations.

414.    On September 2, 2014, Plaintiff was terminated from his employment with Defendant FXCM.

415.    Prior to said termination, Plaintiff was ridiculed by individuals, including Defendant Leonard, for the fact that he abstained from eating pork products, such as ham, bacon, and sausage.

416.    Defendant Leonard taunted Plaintiff for such abstention by placing pork products in and around Plaintiff's work space.

417.    Further, when Plaintiff asked to take a day off for Yom Kippur, which is the highest of all holy days in the Jewish faith, Defendant Leonard informed Plaintiff that he could not, and that Plaintiff's religious obligations, such as Plaintiff's religious observation of Yom Kippur, was a reason why Defendant Leonard did not want to hire Plaintiff.

418.    Additionally, Plaintiff was never granted to access to the prayer room, located in the offices of Defendant FXCM, and was never invited to participate in a minyan.

419.    Accordingly, the impetus for Plaintiff's termination was his religion.

420.    Based upon the foregoing, and given the fact that Plaintiff has satisfied its initial burden, *see Stalker v. Stewart Tenants Corp.*, 2010 N.Y. Misc. LEXIS 6921, *7 (Sup. Ct. N.Y. Co. November 9, 2010), Plaintiff has sufficiently alleged that he was subjected to a discriminatory employment practice, namely his termination, and said termination was caused by and/or resulted from Plaintiff's religion.

63

421.    Accordingly, Plaintiff seeks all lawful remedies under the applicable statutes, including but not limited to back pay, front pay, compensatory damages, punitive damages, attorneys' fees, administrative costs, and all other relief that this Court deems just and proper.

## TWENTY-SEVENTH CAUSE OF ACTION
## VIOLATIONS OF NYCHRL (SEXUAL HARRASMENT)
## AGAINST DEFENDANT LYONS

422.    Plaintiff repeats and realleges Paragraphs 1 through __ of the Complaint as if fully set forth herein.

423.    Under § 8-107(1)(a), it is an unlawful discriminatory practice for an employer, or an employee or agent thereof to discharge an employee because of his/her actual or perceived age, race, creed, color national origin, gender, disability, marital status, partnership status, sexual orientation or citizenship.

424.    To establish a *prima facie* case under the NYCHRL, "a plaintiff need not demonstrate that he or she was subjected to 'severe and pervasive' sexual harassment; plaintiff need only demonstrate that he/she 'has been treated less well than other employees because of his/her gender." *Davis v. Phoenix Ancient Art, S.A.*, 39 Misc3d 1214(A), *6 (Sup. Ct. N.Y. Co. 2013).

425.    In *Williams v. New York City Hous. Auth.*, 61 A.D.3d 62, 78 (1st Dept. 2009), the court determined that "the 'severe and pervasive' test reduces the incentive for employers to create workplaces that have zero tolerance for conduct demeaning to a worker."

426.    Further, "questions of severity or pervasiveness of the discriminatory conduct apply only to damages, not liability." *Williams*, at 76.

427.    During Plaintiff's tenure with Defendant FXCM, his work environment was sufficiently severe and pervasive with sexually charged material and intimidation.

64

3201233.1

428.    Defendant Leonard wrote on the white board in the IT Department: "Alon is a dick. Why won't he shut the fuck up? That is all asshole."

429.    Despite Plaintiff's multiple requests that the posting be removed, it remained for nearly two months, and no other employee in the IT Department was ever the target of such a message on the white board.

430.    Also, during Plaintiff's tenure with Defendant FXCM, Defendant Leonard, deliberately and without permission, changed the background on Plaintiff's computer to a graphic, sexually-explicit image of a naked male with an erect penis, spreading his buttocks, with two hands, to expose his internal anatomy.

431.    Defendant Leonard also took a photograph of Plaintiff and digitally drew onto the photograph the depiction of an individual placing his erect penis in front of Plaintiff's mouth to simulate oral sex and defecation of feces onto Plaintiff's head; and this image was transmitted by Defendant Leonard to all employees in the IT Department.

432.    In addition, Plaintiff was exposed to and often berated with such phrases and depictions of terms such as "tub girl," "meat spin," "lemon party," and "goatse"; Plaintiff was unfamiliar with these terms until he began working for Defendants.

433.    The above-enunciated behavior created a hostile work environment for Plaintiff, reasonably interfered with Plaintiff's work performance, and was perpetrated by Plaintiff's direct and indirect supervisors, namely Defendant Lyons and Defendant Leonard.

434.    Based upon the foregoing, and given the fact that Plaintiff has satisfied its initial burden, *see Stalker v. Stewart Tenants Corp.*, 2010 N.Y. Misc. LEXIS 6921, *7 (Sup. Ct. N.Y. Co. November 9, 2010), Plaintiff has sufficiently alleged that he was subjected to a discriminatory employment practice, namely his termination.

3201233.1

435.   Accordingly, Plaintiff seeks all lawful remedies under the applicable statutes, including but not limited to back pay, front pay, compensatory damages, punitive damages, attorneys' fees, administrative costs, and all other relief that this Court deems just and proper.

## TWENTY-EIGHTH CAUSE OF ACTION
## CIVIL ASSAULT/BATTERY
## AGAINST DEFENDANT LYONS

436.   Plaintiff repeats and realleges Paragraphs 1 through __ of the Complaint as if fully set forth herein.

437.   As previously mentioned, Plaintiff served in the IDF.

438.   Defendant Lyons, who was taking physical training classes which included hand-to-hand combat instruction.

439.   During Plaintiff's tenure with Defendant FXCM, Defendant confronted Plaintiff seeking to "show off" what he learned in these classes.

440.   Plaintiff informed Defendant Lyons that he did not desire any physical touching by Defendant Lyons.

441.   Nevertheless, without permission and/or consent, Defendant Lyons grabbed Plaintiff by the hand.

442.   During the ensuing struggle, Defendant Lyons broke Plaintiff's finger.

443.   Plaintiff, later, went to the appropriate medical facility and said brake was confirmed.

444.   Accordingly, Plaintiff seeks all lawful remedies, including but not limited to reimbursement for medical bills, personal damages, punitive damages, attorneys' fees, administrative costs, and all other relief that this Court deems just and proper.

66

## STATEMENT OF CLAIM FOR RELIEF

445.    By the actions and omissions described above, Defendants have violated Title VII, the NYSHRL, and the NYCRHL.

## JURY DEMAND

446.    Plaintiff hereby demands a trial by jury.

67

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays that this Court will:

- Find that Defendants, individually and collectively, violated Title VII, the NYSHRL, and/or the NYCHRL;

- Award compensatory damages to Plaintiff for back pay and front pay;

- Award compensatory damages to Plaintiff for the pain, suffering, emotional distress, loss of dignity, humiliation, and damages to reputation and livelihood endured by Plaintiff in the amount totaling $400,000.00;

- Award Plaintiff punitive damages in an amount to be determined at trial;

- Award Plaintiff damages as a result of the civil assault/battery;

- Award Plaintiff all reasonable attorneys' fees and costs, including expert fees, of this action and ensuring compliance with any order for injunctive relief, as provided for in 42 U.S.C. § 1988 and 42 U.S.C. § 2000e-5(k); and

- Grant Plaintiff such other and further relief as this Court deems appropriate and equitable, as may be required in the interest of justice.

Dated: East Meadow, New York
     January 12, 2016

CERTILMAN BALIN ADLER & HYMAN, LLP.

By: _____
      STEPHEN MC QUADE, ESQ.
      *Attorneys for Plaintiff*
      90 Merrick Avenue, 9th Floor
      East Meadow, New York 11554
      516-296-7172
      Fax: 516-296-7111
      smcquade@certilmanbalin.com